F. SITTERDING v. J. M. GRIZZARD AND T. T. GASKINS.

*Contract— Vendor and Vendee—Option—Abandonment.*

1. S. agreed to buy and pay cash for certain tracts of timber land which
   G. might thereafter contract for to the extent of $4,000, G. agree-
   ing to take the same at an advance of fifteen per cent. at the expira-
   tion of one year, and in the meanwhile to cut and sell the timber:
   *Held*, that the contract established between S. and G. the relation
   of *vendor* and *vendee* and was not an *option;* the obligation being
   mutual, neither could escape its force without the consent of the
   other.

2. Where one party to a contract relies upon a renunciation of it by the
   other the burden is upon him to show by positive and unequivocal
   proof not only that the other party abandoned the contract but
   that he himself accepted the renunciation.

CIVIL ACTION, tried before *Bynum, J.,* and a jury, at Fall
Term, 1893, of HALIFAX Superior Court. The plaintiff
sought to recover possession of certain lands bought by
defendant Gaskins for him under the contract set out in the
complaint, and also to have the rights of the said defend-
ant in said lands foreclosed and the appointment of a
receiver, who should sell the lands, betterments, etc., and
hold the proceeds subject to the final adjudication of the
rights of the parties. The contract was as follows:

SITTERDING v. GRIZZARD.

"This contract, made and entered into this 23d day of March, 1891, between F. Sitterding, of Richmond, Virginia, of first part, and T. T. Gaskins, of Greenville county, Virginia, of second part, witnesseth:

"That F. Sitterding agrees to buy and pay cash for certain tracts of timber adjacent to each other in the county of Halifax, North Carolina, which the said Gaskins has or may hereafter contract for to the extent of four thousand dollars, and that the said Gaskins agrees that at the expiration of twelve months from April 1, 1891, he will take the said tracts of timber off of his hands at an advance of fifteen per cent. on the price paid by the said Sitterding.

"It is agreed that Sitterding shall have all the timbered lands purchased by him under this contract thoroughly examined, both as to title and quantity of timber estimated to be on the land, and that the said Gaskins shall pay for all costs incurred in the said examination, and also for the writing and recording of all deeds and papers connected with the transactions.

"It is agreed that the said Gaskins may proceed at once to cut and manufacture said timber into lumber, provided, however, that all of said lumber shall be sold or handled through A. L. Shepherd & Co., who shall deduct one dollar per thousand on each and every thousand manufactured, to go as a credit on whatever sum which may have been paid out by said Sitterding, and which shall go as a credit on the amount to be paid by said Gaskins on first day of April, 1892.

"And it is further agreed that so soon as the purchase of timber has been completed that this contract shall be re-written so as to give description of the timber above referred to.

"Witness our hands and seals, this 7th day of April, 1891.

　　　　　　　"F. SITTERDING,. [Seal.]
　　　　　　　"T. T. GASKINS, [Seal.]"

The time for the payment of the purchase-money by the defendant Gaskins was extended to April 1, 1893, and again to May, 1893. Although large quantities of lumber were shipped to Shepherd & Co. no part of the proceeds of its sale was paid to the plaintiff, who neither assented to nor dissented from the non-payment of the one dollar per thousand feet which the contract provided should be paid to him. Gaskins obtained supplies and advancements of money from Shepherd & Co., and statements of his account were regularly sent to the defendant, so that he knew that the one dollar per thousand feet of lumber was not paid to plaintiff. In January, 1893, plaintiff wrote to Gaskins that the matters between them could not remain any longer in an unsettled condition, and thereupon defendant went to Richmond, and, in a conference between them and Shepherd & Co., it was agreed that the matters should be closed up by April 1, 1893, and in case defendant should not be able to get other parties to buy the lands his rights under the contract should be at an end. On the 28th of March, 1893, defendant wrote a letter to plaintiff saying that on account of delays he could not settle by the first of April, 1893, and added, " so I write to say that while I, of course, consider the option legally at an end on April 1, 1893, I beg that you will permit me to go on with my negotiations and make such arrangements to the end that you shall, before long, have your money. I will not cut another tree after first of April, but want to go on and saw up what logs are on the skidways, which will the better enable me to square up with you and Mr. Shepherd." To the request contained in the letter the plaintiff acceded, being assured that the defendant could make his arrangements to settle in a few days. Shortly thereafter, without notice to the plaintiff, Gaskins executed a deed of trust to the defendant Grizzard, conveying his interest in the lands, saw-mills, tramway, lumber, etc.

On the trial there was verdict and judgment for the defendants, and plaintiff appealed.

*Messrs. R. O. Burton* and *Mullen & Daniel,* for plaintiff (appellant).

*Messrs. Thomas N. Hill* and *W. H. Day,* for defendants.

BURWELL, J.: The contract set out in the second paragraph of the complaint, the execution of which is admitted, established between the plaintiff and the defendant Gaskins the relation of vendor and vendee. It is not an "option." It does not provide that the plaintiff will convey *if the said defendant elects to pay a certain sum on or before a certain day.* It binds both parties—the one to sell and convey, and the other to accept the deed and pay for the property. The obligation being mutual, neither can escape its force without the consent of the other. Time is not of the essence of such a contract. The vendee thereunder, in possession, has the rights of a mortgagor, while those of the vendor are similar to the rights of the mortgagee.

There is no dispute about what property is covered by this agreement, and the price is fixed by reference to its cost, and the latter is established by the deed made to the plaintiff.

We find in the record no evidence sufficient to establish an abandonment of this contract by the defendant Gaskins. What amounts to such an abandonment was a matter of law to be determined by the Court. *Dula* v. *Cowles,* 7 Jones, 290. "The acts and conduct constituting such abandonment must be positive, unequivocal and inconsistent with the contract." *Fair* v. *Whittington,* 72 N. C., 321; *Miller* v. *Pierce,* 104 N. C., 389. If the plaintiff relied upon a renunciation of the contract by the defendant Gaskins it was his duty to make it out unmistakably, and also that

he himself had accepted that renunciation and agreed expressly or impliedly to release the defendant from his obligation. There was some evidence that the defendant considered that he had only "an option" to purchase. There was no sufficient evidence, we think, that plaintiff abandoned or waived any of his rights under the agreement. Hence, both are still bound by its provisions. The defendants insist that the vendee Gaskins has paid a part of the purchase-money. They seem to concede that the plaintiff never in fact received any payment either from the hands of Gaskins or from the hands of A. L. Shepherd & Co., and indeed there seems to be no dispute about the facts relating to this part of the controversy. Gaskins shipped to A. L. Shepherd & Co. a large amount of lumber under the contract; they did not pay to the plaintiff the sum (one dollar for each one thousand feet) which the contract provided they should reserve for that purpose; the plaintiff did not expressly assent to this nor did he dissent; Shepherd & Co. rendered statements to Gaskins from time to time which showed that they had applied to his use all the proceeds of the lumber, and that they had not reserved any sum for plaintiff; he did not object, though he examined the accounts. We merely state the facts and our conclusions that no payment whatever seems to have been made to the plaintiff on account of the purchase-money.

From what has been said it follows that there is really no issue of fact between the parties as the matter is presented in the record before us. The costs of all the property bought by the plaintiff under the contract prior to April 1, 1892, should be ascertained. To that amount should be added fifteen per cent. The plaintiff is entitled to recover of the defendant Gaskins that sum, with interest thereon from April 1, 1892, and also whatever has been expended by him in purchases since that date, with fifteen per cent.

·added, and interest on the cost of each purchase from its date, and a decree of sale should be entered and the proceeds applied according to the rights of the parties.

Error.