BROCKENBROUGH v. CHAMPION FIBRE CO.

(Circuit Court of Appeals, Fourth Circuit.   March 9, 1910.)

No. 945.

1. SALES (§ 128*)—CONTRACT—RESCISSION.
    Defendant having contracted to purchase certain pulp wood from plaintiff, deliverable from year to year beginning July, 1908, without objection postponed the delivery until October 1, 1908, and on October 14th suggested that plaintiff defer shipments until spring because of the congested condition of its yards.   Plaintiff made no reply to this, but immediately requested cars from a railroad company to "test the matter," which cars were refused because defendant had placed an embargo on shipments of wood which continued only from October 1st to 28th.   When plaintiff ordered the cars, he had made no preparation to cut or haul any wood, nor did he own any timber in the territory to which he was limited by the contract, nor had he made any effort to buy any such wood from others.   Held, that defendant's embargo and suggestion to delay shipments did not constitute a total repudiation of the contract.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. § 318; Dec. Dig. § 128.*]

2. APPEAL AND ERROR (§ 171*)—THEORY OF CAUSE—CHANGE—REVERSAL.
    Where, in a suit for breach of a contract to purchase pulp wood, plaintiff based his whole case as pleaded on defendant's total repudiation and termination of the contract, on which theory he was defeated, he was not entitled to a reversal on the theory that he was entitled to recover damages for defendant's delaying plaintiff's execution of the contract so far as first year's deliveries were concerned.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1053–1061; Dec. Dig. § 171.*]

In Error to the Circuit Court of the United States for the Western District of North Carolina, at Asheville.

Action by Edward H. Brockenbrough against the Champion Fibre Company.   Judgment for defendant, and plaintiff brings error.   Affirmed.

This was an action at law instituted in the superior court of McDowell county, N. C., by Edward H. Brockenbrough, a citizen of Virginia, against the Champion Fibre Company, an Ohio corporation, operating a wood fiber, pulp, and extract plant at Canton, N. C.

The complaint sets forth the execution of a contract whereby the plaintiff was to deliver from a certain defined territory in that state to defendant company at Canton, during a term of five years, not less than 3,000 nor more than 8,000 cords each year of chestnut and other woods in accord with specifications set forth, for which he was to receive $4.50 per cord if minimum amount was furnished the first year, and 25 cents additional per cord each succeeding year upon the same conditions as well as fixed bonuses each year after the first.   This contract, dated February 15, 1908, provided that shipments under it should commence July 1st following, and should be subject to "delays beyond control of the parties, as to forwarding and receipt."   The complaint alleges, in effect, that, at the request of defendant, the date of commencement of shipments was postponed until October 1, 1908; at which time plaintiff was in all respects ready, able, willing, and anxious to commence shipments and comply with said contract to the maximum limit, but that the Southern Railway afforded the only means of transportation, and, when he applied to this company for cars, he was informed that the defendant had on October 1, 1908, placed an embargo on all chestnut wood consigned to it at Canton, in consequence of which the railway company would receive no chestnut wood for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

shipment to defendant until this embargo was lifted. It is alleged, further, that chestnut wood was the only wood which was contemplated to be furnished by the contract unless small quantities of the other varieties had been found in the course of cutting the chestnut; that, in consequence of this embargo, it became impossible for plaintiff to perform the contract. It is also alleged that, after the execution of the contract and at the time of the laying of the embargo, a great slump in the value of the wood had occurred, and that if plaintiff had been permitted to perform the contract, which he alleges he was financially and otherwise fully prepared to do, he would have derived a profit of some $61,000, which sum he claims he is entitled to recover by reason of defendant's repudiation of the contract.

The cause was properly removed to the Circuit Court of the United States for the Western District of North Carolina, where answer was made by defendant in effect denying the repudiation of the contract, charging the embargo to have been only temporary, setting forth the reasons therefor, and alleging that it was lifted 28 days after it was laid. A trial was had. Four issues were agreed to be submitted: First, whether the contract had been executed; second, whether defendant committed a breach of it; third, whether at the time of its breach the plaintiff was able, ready, and willing to perform it; and, fourth, what damage plaintiff would be entitled to recover. After all the evidence was presented, the court below, on motion of defendant, directed a nonsuit to be entered. To this action of the court this writ of error has been sued out by plaintiff.

F. S. Kirkpatrick and James H. Merrimon (Kirkpatrick & Howard and Pless & Winborne, on the brief), for plaintiff in error.

Louis M. Bourne (Davidson, Bourne & Parker and Allen T. Morrison, on the brief), for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and DAYTON, District Judge.

DAYTON, District Judge (after stating the facts as above). In our judgment the controversy in this case, under the pleadings, narrows itself to a single question of law and fact. It is undisputed that the plaintiff in error had a five-year contract to deliver to defendant in error cordwood within fixed minimum and maximum limits each year for prices increasing in amount from year to year; that he was to commence delivery July, 1908, but, at the request of the defendant company, without objection postponed the beginning of delivery until October 1, 1908; that about October 14th he went from his contract work in Virginia to the defendant's place of business at Canton, N. C., to see Oma Carr, the manager of the defendant's wood and extract departments, in regard to this contract and the delivery of this wood; that he found that, by reason of the overstocking and congestion of the company's woodyards, it had sought and obtained from the railroad company the promulgation of a temporary embargo upon delivery to it of chestnut wood; that, not finding Carr, on the next day he sent Garst back with a letter to him in which he stated:

"I'm again ready to commence shipments & urge you not to delay the performance of this contract longer, having already lost nearly 4 months of best weather. Kindly answer this by Mr. Jack Garst as I will be here this P. M."

Garst saw Carr, who explained the condition of the company's yards to which had been shipped 1,200 cars of wood in September and 1,100 in October, and the reason for the embargo, and sent back to plaintiff a reply to his letter, as follows:

·"Suggest that in view of short time until roads get bad, and our difficulties here in being able to handle incoming shipments regularly, you wait until spring before opening your territory. As an alternative, suggest that you look over S. & W. territory for hemlock to work this winter. Can fix this so that you can get $6.00 on cars at Marion."

Plaintiff made no reply to this, but went immediately to two stations of the railroad company and asked for cars to be placed for the purpose of shipping chestnut wood to defendant at Canton. At one of these places he was informed by the railroad agent that his request could not be granted because of the embargo. At the other the agent, not having received notice of the embargo, informed him that the car would be placed for him when he had wood there with which to load it. Plaintiff then informed this agent of the embargo, and indicated his purpose was to "test the matter." He in fact had made no preparation to cut and haul any wood, owned no timber in the territory to which his contract limited him from which to cut and haul it, and had made no effort to buy any such wood from others. The embargo declared October 1st was lifted on October 28th following. Plaintiff on October 26th, 12 days after his arrival from Virginia at Canton, instituted this suit for the purpose of recovering $61,- 000 damages for the alleged breach on the part of defendant of the contract. The sole question is whether the action of the defendant under the circumstances constituted in law a repudiation of the contract in its entirety. We think not. In support of this conclusion we cite Sitterding v. Grizzard, 114 N. C. 108, 19 S. E. 92; May v. Getty, 140 N. C. 310, 53 S. E. 75; Redding v. Vogt, 140 N. C. 562, 568, 53 S. E. 337; Dingley v. Oler, 117 U. S. 490, 6 Sup. Ct. 850, 29 L. Ed. 984; Smoot's Case, 15 Wall. 36, 21 L. Ed. 107; Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953.

But it is insisted that, if the contract was not wholly repudiated, the plaintiff was entitled to recover damages because of defendant's action in delaying its execution, in the deliveries for the first year, and this under the liberality allowed in North Carolina practice and pleading. We do not think so. The whole theory of plaintiff's case as set forth in his complaint was that the contract had been by the company wholly repudiated, and that it was thereby wholly terminated. The whole case was tried upon this theory. The issues to be submitted to the jury were agreed and settled, and no such issue as to whether plaintiff was entitled to damage by reason of delay in execution of the contract was asked to be submitted. Had plaintiff desired to raise an issue of this kind, the way was open for him to have done so by amending his complaint before or at any time before the issues were submitted to the jury. This he did not ask to do, but tried his case upon the sole theory that defendant's acts had wholly terminated the contract. Under such circumstances, he cannot come here and ask for a reversal because he was not allowed to recover in the court below something that he did not there seek to recover. It is true that the North Carolina practice is liberal, but we have no question but what it is in strict accord with this ruling; for in Moss v. Railroad Co., 122 N. C. 889, 29 S. E. 410, it is held:

"A complaint proceeding upon one theory will not authorize a recovery upon another and entirely different theory."

And it is further held in this case to be "a settled maxim of law that proof without allegation is as unavailable as allegation without proof." To the same effect is McCoy v. Railroad, 142 N. C. 383, 55 S. E. 270, and Conley v. Railroad, 109 N. C. 692, 14 S. E. 303.

In Sloan v. Hart, 150 N. C. 269, 63 S. E. 1037, 21 L. R. A. (N. S.) 239, it is said:

"Such specific damages as may have reasonably been within the contemplation of the parties are allowed in this class of cases, but they must be both pleaded and proven before the court can submit them to the consideration of the jury."

If plaintiff had a just cause of action based upon the theory of a partial breach of the contract and not an entire repudiation of it, about which we express no opinion, it is to be borne in mind that the action of the court below in directing a nonsuit does not estop him under certain well-defined rules and limitations from asserting said right.

We therefore find no error in the judgment of the court below, and it will be affirmed.