ASA GRIFFIN

*v.*

THE BOARD OF REVIEW OF LASALLE COUNTY.

*Opinion filed February 19, 1900.*

</div>

1. TAXATION—*amount due under contract to sell land is taxable as a credit.*   The amount remaining unpaid under an agreement to convey land by warranty deed upon the payment of a specified sum of money, is taxable as a "credit" under clause 2 of section 1 and clause 1 of section 6 of the Revenue act of 1872, where the vendee is in possession of the land and has agreed to pay the taxes, although the vendor holds the title to the land in his name and the amount due is not evidenced by a promissory note.  (CARTER and CRAIG, JJ., dissenting.)

2. SAME—*Revenue act of 1872 determines what property is subject to taxation.*   Section 17 of the Revenue act of 1898, concerning the preparation of the schedule of taxable property, does not operate to exclude credits from taxation, since the act of 1898 does not purport to specify what property shall be assessed, but expressly leaves that matter to be governed by the general act of 1872.

3. SAME—*effect of insolvency of payor of claim or demand.*   The insolvency or part insolvency of the payor of an unsecured claim or demand affects only the assessable value of the credit, and not its liability to assessment.

APPEAL from the Board of Review of LaSalle county.

H. C. WILEY, for appellant.

E. C. AKIN, Attorney General, (C. A. HILL, and B. D. MONROE, of counsel,) for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

On the 13th day of October, 1895, the appellant, Griffin, entered into a contract with George Riehl, Jr., in the words and figures as follows:

"Between Asa Griffin, party of the first part, and George Riehl, Jr., party of the second part:

" *Witnesseth,* That if the party of the second part shall first make the payments and perform the covenants hereinafter mentioned on his part to be made and performed, the said party of the first part hereby covenants and agrees to convey and assure to the said party of the second part, in fee simple, clear of all encumbrance whatever, by a good and sufficient warranty deed, the lots, pieces or parcels of ground situated in the county of LaSalle and State of Illinois known and described as 438.10 acres in sections 1, 2 and 12, in township 36, range 2, east of the third principal meridian; and the said party of the second part hereby covenants and agrees to pay to the said party of the first part the sum of $37,400 in the manner following: $4000 cash in hand paid, the receipt of which is hereby acknowledged, and the balance, $33,400, to be paid on the first day of March, 1908. The party of the second part is to have the privilege of paying on this contract at any time before said date, in sums of $1000 or more, with interest from the first day of March, 1896, at the rate of six per cent per annum, payable annually on the first day of March, on the whole sum remaining, from time to time, unpaid, principal and interest payable at the First National Bank, Earlville, Illinois, and to pay all taxes, assessments or impositions that may be legally levied or imposed upon said land subsequent to the year 1895. And in case of failure of the said party of the second part to make either of the payments, or any part thereof, or perform any covenants on his part hereby made and entered into, this contract shall, at the option of the party of the first part, be forfeited and determined, and the party of the second part shall forfeit all pay-

ments made by him on this contract, and such payments shall
be retained by the said party of the first part in full satisfac-
tion and in liquidation of all damages by him sustained, and he
shall have the right to re-enter and take possession of the prem-
ises aforesaid. The party of the second part shall have the pos-
session of and the use of said above described premises from and
after the first day of March, 1896, and until any default in pay-
ment as aforesaid. It is mutually agreed by and between the
parties hereto that the time of payment shall be the essence of
this contract, and that all the covenants and agreements herein
contained shall extend to and be obligatory upon the heirs, ex-
ecutors, administrators and assigns of the respective parties.

"In witness whereof the parties of these presents have here-
unto set their hands and seals the day and year first above
written."

The agreement bore the following endorsements:

"March 1, 1896, on principal   -   -   -   - $100.00
  March 12, 1896, on principal  -   -   -   - 850.00
  March 2, 1897, account interest  -   -   - 500.00
  June 29, 1897, account interest  -   -   - 40.00
  Sept. 27, 1897, paid account interest  -  1,450.00
  Nov. 24, 1897, pd. bal. int. to Mar. 1, '97 -  - 16.00
  March 1, 1898, paid account interest  -  - 800.00
  April 2, 1898, paid account interest  -  - 400.00
  Oct. 1, 1898, pd. bal. int. to Mar. 1, 1898 -  - 775.22
  Feb. 28, 1899, pd. int. to Mar. 1, 1899.

"EARLVILLE, ILL., *Nov. 24, 1897.*

"It is hereby mutually agreed by and between the parties
to the within contract that the time of payment is hereby
extended from the first day of March, 1908, to the first day of
March, 1913, at the same rate of interest and with the same
privileges.              ASA GRIFFIN,

                         GEORGE RIEHL, Jr."

The board of review of LaSalle county held the amount
remaining unpaid, under the terms of the contract, on
the first day of April, 1899, was properly assessed for
taxation against the appellant. The correctness of that
ruling of the board is the only question here necessary
to be determined.

Riehl, by an express stipulation incorporated in the
instrument, covenanted and agreed to pay appellant the

sum of $37,400 for the land. The manner, time and place
of payment thereof were distinctly and definitely settled
by the contracting parties and stated in the writing.
The legal effect of the transaction was to create the re-
lation of debtor and creditor between the parties, Riehl
being the debtor of appellant. The indebtedness due to
appellant was based upon a valuable consideration, and
constituted a legal and subsisting demand in favor of ap-
pellant to have and recover from Riehl, at a fixed time
in the future, specified sums of money. This claim or
demand is enforceable in an appropriate action at law.
In such an action appellant can recover a judgment
against Riehl, and by virtue of an execution on such
judgment may seize and sell any property owned by
Riehl subject to be levied upon and sold for the satis-
faction of judgments against him. Appellant's remedy
in this respect would not be more complete if he held the
note of Riehl to the same tenor and effect as that of the
agreement. Claims and demands having such a legal
status have long been held and recognized to be a spe-
cies of property and denominated credits. Credits are
required to be listed and assessed for taxation by the
provisions of the second clause of section 1 and the first
clause of section 6 of the act entitled "An act for the
assessment of property and the levy and collection of
taxes," approved March 30, 1872. (Hurd's Stat. 1899,
pp. 1393, 1394.) The word "credits," as employed in that
enactment, is defined in the sixth clause of section 292 of
the act as being every claim or demand for money, labor,
interest, or other valuable thing due or to become due,
not including money on deposit.

We do not assent to the view urged upon us that sec-
tion 17 of the act of the General Assembly in force July 1,
1898, entitled "An act for the assessment of property and
providing the means therefor," etc., excludes credits as
an item of assessable property. Said section does not
purport to declare what property shall be liable to taxa-

tion. Its provisions are addressed to the duties of the owner of taxable personal property in the preparation of the list or schedule of such property for assessment, and to the duty of the assessor in the matter of determining and setting forth the value of the items of property so appearing upon the schedule. The statute in force at the time of the adoption of the act of 1898 was the act of 1872. The later act does not, in any section thereof, attempt to specify what property or species of property shall be assessed for taxation, but expressly declares in the seventh section, "all property in this State shall be subject to assessment and taxation as provided by the general laws for the assessment of property and for the levy and collection of taxes except such property as may be exempt therefrom by such general laws." And section 55 expressly provides that "all the provisions of the general Revenue law in force prior to the taking effect of this act shall remain in force and be applicable to the assessment of property and collection of taxes except in so far as by this act is otherwise expressly provided." The act of 1872 is therefore to be resorted to in order to determine the property legally liable to assessment for taxation. That it was not the legislative intent, in the enactment of the later statute, to change the provisions of the former with reference to the assessment of credits for taxation is further unmistakably manifested by the provisions of section 18 of the later statute, which expressly provides "personal property shall be valued at its fair cash value, less such deductions as may be allowed by law to be made from credits," etc.

The appellant invested Riehl with the possession and beneficial use of the land, and obligated himself to invest him with the title also upon the fulfillment by Riehl of the obligations on his part relative to the payment of the remainder of the purchase price of the land. For all the purposes of determining as to the liability of the land, and of the indebtedness due to appellant, to assessment

for taxation, the retention of the title by the appellant may be regarded as but a mode adopted to secure the payment of the full purchase price of the land. In that view, the liability of the land and the debt to taxation is the same as in a case where the title has been placed in the purchaser and payment of the purchase price secured by means of a mortgage on the land acknowledging the indebtedness and creating a lien on the land to secure the payment. A debt secured by mortgage, and the land mortgaged to secure the debt, are both subject to taxation. (*People* v. *Rhodes*, 15 Ill. 304; *People* v. *Worthington*, 21 id. 171.) The legal effect of the transaction between the parties hereto was to create new or additional property, viz., a legally enforceable demand in favor of the appellant to recover from said Riehl the unpaid balance of the purchase money of the lands. This property is entirely distinct from the property in the land. Taxation levied upon both of said properties is not double taxation. (Cooley on Taxation, pp. 220, 222, 223, and authorities cited in notes; 25 Am. & Eng. Ency. of Law, 68; *People* v. *Worthington, supra.*) That the payor of a claim or indebtedness may not be solvent or not fully solvent, and the payment of the claim or demand in nowise secured, affects only the assessable value of the credit,—not the liability thereof to assessment for taxation.

The order of the board of review is approved and affirmed.

*Order affirmed.*

Mr. JUSTICE CARTER, dissenting:

The contract set out in the opinion of the court is not a contract of sale but a contract for a sale. It is a mere executory agreement to convey on certain conditions, and I do not agree that the unpaid purchase money therein mentioned is a credit, within the meaning of the Revenue law. No title passed to the obligee, but it remained in the obligor, and the lands described in the agreement were assessable to the obligor as his property, and were

in fact assessed to him.   The mere fact that the obligee covenanted to pay the taxes on the land assessed subsequently to 1895 did not make him the owner of either the legal or the equitable title to the property.   The land still belonged to Griffin.   He had agreed to convey it in fee simple by a sufficient warranty deed on certain conditions, but had not sold it.

The question then is presented whether the owner of property who has made a mere executory agreement to convey it for and upon the payment of a stipulated price, to one who, by such agreement, promises to pay that price at the time fixed upon, no promissory note or obligation other than such agreement having been given, can be assessed both upon the property and the price or amount agreed to be paid for it.   I am of the opinion that in such cases the property to be assessed is the land or other property so agreed to be sold and transferred, and not the agreement for such future sale or transfer. To tax both is to levy and assess double taxes on what in reality is the same thing.   We have held that where the owner sold tracts of land taking the purchaser's notes therefor, secured by mortgage on such of the tracts as he conveyed, and as to other tracts gave his bond for a deed, and the lands having been assessed to the purchaser, the notes were taxable in the hands of the vendor. (*People* v. *Rhodes*, 15 Ill. 304; *People* v. *Worthington*, 21 id. 170.)   But in these cases there was a sale whether the legal title passed or not, and a credit was created by the notes in the hands of the holder of them.   The notes were property.   There is a vital distinction between a sale and a mere executory agreement for a sale.   Thus it is said in 21 American and English Encyclopedia of Law, 478, note: "In the one case A sells to B; in the other he only promises to sell.   In the one case B becomes the owner of the goods themselves as soon as the contract is completed, by mutual consent.   If they are lost or destroyed he is the sufferer." *Barrow* v. *Window*, 71 Ill. 214.

If two parties, by sale, have out of one kind of property created two kinds, both are taxable; but if they have only agreed to do so, such agreement is not taxable as a credit or as property, in the sense those terms are used in our revenue laws. To hold otherwise is to hold that the framers of such laws intended to tax contracts as such, and according to the value of the property involved, or the amount of damages which might be recovered for a breach of them, in addition to the property itself. In *People* v. *Rhodes, supra,* it was said the notes received by the vendor for the land were credits, and that "he had converted land into this kind of property. It is true, the land had not been conveyed, but he held the naked legal title merely to secure the payment of the purchase money. * * * There is no force in the objection that the same property was twice subjected to taxation. The land was the property of Walker, (the vendee,) and was by him listed for taxation. The notes were the property of Rhodes and were assessed to him." And in *People* v. *Worthington* it was said that a new property was created by the transaction, which, as before said, was a sale, and promissory notes were given for the purchase money. In the case at bar such was not the case, and I do not think that by mere construction of doubtful accuracy we should place a burden upon the right to contract.

I do not deny the validity of the act for the taxation of credits, but I insist that the statute so providing, and defining the term "credits" as "every claim or demand for money, labor, interest or other valuable things due or to become due, not including money on deposit," should receive a reasonable construction so as to avoid double taxation. The money promised to be paid by this contract could not be recovered without compliance with his contract by Griffin. There was no absolute or unconditional indebtedness. If A and B should enter into a contract providing that B should work or labor for A for one year and that A should pay B $200 for such work and

labor, would it be contended that at the outset B had a demand against A for $200 in money which would be taxable in his hands as a credit, and that A had a demand against B for labor which would be taxable to him as a credit? As a credit is defined to be a demand for any "valuable thing," why, under the opinion of the court, would not Riehl's right, by the contract, to have Griffin convey the land to him upon payment of the contract price be a demand for a valuable thing—for land—and taxable as a credit in his hands? Riehl was no more bound to pay than Griffin was to convey. The title remained in Griffin and was assessed to him. By such a construction for purposes of taxation three kinds of property would be created: First, the real and only property—the land; and the other two, fictitious credits—one a demand for money and the other a demand for land. So, also, if A and B agree to exchange horses at a future designated day, in a certain sense each would have a demand against the other for the horse contracted for; but no one would contend that, in addition to the two horses, there would be two credits of similar value created for purposes of taxation. Such executory agreements are not credits. The fact that they are enforcible proves nothing. True, it has been held that promissory notes given for lands purchased, where the vendor retains the legal title as security for payment, executing a bond for a deed, the land being assessed to the purchaser, are taxable as credits; but I know of no previous case in which this court has held that a mere agreement for a future sale and payment is a credit, within the meaning of the Revenue law.

Mr. JUSTICE CRAIG: I concur in the views expressed in the dissenting opinion of Mr. Justice CARTER.