Thomas Williams, *Appellee*, v. The Board of County Commissioners of the County of Osage *et al.*, *Appellants*.

No. 16,966.

SYLLABUS BY THE COURT.

Taxation—*Personal Property—Debt Owing to Vendor on Contract of Sale of Land.* Where two parties enter into a written contract for the sale of real estate, and the purchaser makes a partial payment thereon and a definite promise to pay the remainder of the price at a certain time or times and to pay the taxes on the land, and is to receive possession thereof at a certain date, and the seller undertakes to convey the legal title to the land upon the payment in full of the amount of the

Williams v. Osage County.

purchase price, such transaction creates a debt from the .purchaser to the seller, which is secured by the retention of the legal title to the land by the seller until the debt is paid. The .debt is personal property and is taxable under the laws of this state, and this notwithstanding a provision in the contract that upon the failure of the purchaser to meet the conditions .of the contract within a reasonable time the contract shall terminate and become void.

Appeal from Osage district court. Opinion filed April 8, 1911. Reversed.

. A., B. Crum, for the appellants.

J. H. Stavely, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was brought by Williams to recover the sum of $97.50, which sum he had paid under protest, as taxes for the year 1908 upon two contracts for the sale of land and payment therefor. The contracts, which were executed by both parties and acknowledged,. read:

"Exhibit A.    "AGREEMENT.

"This agreement, made this 21st day of May, 1906, by and between Thomas Williams, an unmarried man, party of the first part, and Abram Ashelford, party of the second part,

"WITNESSETH: That said Williams .agrees to do as follows: To sell and convey to said second party, his heirs or assigns, half the west (½) of section 3, in township 17, range 15, east of the 6th .P. M., in Osage county, Kansas, by general warranty deed, free from all encumbrances, and to furnish an abstract of title to said land down to the making of the deed, on payment to him of the sum of twelve thousand dollars, payable· as follows: Five hundred dollars cash, on. the signing and delivery of these papers, the receipt of which is hereby acknowledged, and the sum of. two thousand dollars on or before March 1; 1907, and the sum of not less than two thousand dollars annually on or before March 1 of each succeeding year until all of said consideration shall have been paid in full. All

deferred payments to draw interest from March 1, 1907, at the rate of four per cent per annum, interest to be paid annually on all deferred payments; possession to be given March 1, 1907.

"Williams to pay the taxes for 1906. The insurance to be transferred to Ashelford, but the loss, if any, shall be paid to Williams and applied on this contract.

"Said Ashelford agrees to do as follows: To pay said sum of twelve thousand dollars at the times and in the manner as aforesaid, and to pay the taxes on said land after the present year.

"It is agreed between the parties hereto that if the terms of this agreement are not met with and by the party of the second part within a reasonable time after the same shall become due and payable, then this contract shall cease and terminate and shall be forever void. If the said sum of $2000 is not paid on March 1, then this contract shall terminate and the sum of $500 this day [paid] shall be forfeited."

"Exhibit B.     "AGREEMENT.

"This agreement, made and entered into this 24th day of November, 1906, by and between Thomas Williams, an unmarried man, party of the first part, and Charles F. Davis, party of the second part,

"WITNESSETH: That the said party of the first part hereby covenants and agrees to sell and convey, by a good and sufficient general warranty deed, the southwest quarter of section twenty-two (22), in township seventeen (17), range sixteen (16), east of the 6th P. M., in Osage county, on payment to him, the said Thomas Williams, his executors, administrators, or assigns, the sum of forty-five hundred dollars, in payments as follow: The sum of fifteen hundred dollars cash on the signing hereof, the receipt of which is hereby acknowledged, and the balance, to wit, three thousand dollars, on or before five years after March 1, 1907, with interest thereon from March 1, 1907, at the rate of five per cent per annum, interest payable annually, with the privilege to said party of the second part to pay the sum of one hundred dollars, or any multiple thereof, at any interest-paying time, on said balance. The deed to be delivered on full payment being made of said consideration.

"Said first party agrees to deliver with said deed an abstract of title down to this date showing a good merchantable title, free from all encumbrances, so far as Thomas Williams and his grantors are concerned. Said first party to pay the taxes for the present year, 1906, and preceding years, and said second party to pay the taxes and assessments for 1907 and subsequent years.

"And the second party hereby covenants and agrees to pay said sum of $4500 as above set forth, and the interest thereon as aforesaid, with the taxes as above provided, and in case he or his legal representatives should fail or refuse to pay said sum or sums or the interest thereon at the times and in the manner above set forth, or the taxes on said land when the same becomes due and payable, then the whole of the balance remaining due and unpaid for said land shall at once become due and payable, and such steps may be taken, as may be legal, to enforce this contract, as said first party may think best.

"The second party is to insure and keep insured the buildings on said land in the sum of five hundred dollars; loss, if any, payable to said first party. Possession to be given March 1, 1907."

The case was submitted to the court upon the pleadings and an agreed statement of facts, a jury having been waived. The petition alleged that the plaintiff was a taxpayer in the county; that the defendants named were the county commissioners, the county treasurer and the county clerk; the execution of the contracts; the assessment of the contracts as of the value of $12,-500, over the objection of the plaintiff; the refusal of the board of equalization to reduce the assessment, and an appeal from the decision of the board of equalization to the state tax commission to correct such erroneous assessment; the refusal of the state tax commission to allow the plaintiff any relief, and the dismissal of his appeal; that the county commissioners levied a tax, amounting to $97.50, on the contracts, and the county clerk entered the same upon the tax rolls and turned the same over to the county treasurer for collec-

tion; the payment of the taxes by the plaintiff, under protest, and to avoid the issuance of a tax warrant for the collection of the same; and that the taxes were illegal and void. The defendants interposed a demurrer to the petition, which was overruled by the court.' Thereupon the defendants filed a general denial. The agreed statement of facts admits the substance of the allegations of the petition, except, of course, that it is not admitted that the tax is illegal, and admits that no part of the tax had been refunded to the plaintiff. The issues were found in favor of the plaintiff, and that he recover from the board of county commissioners the sum of $97.50. A motion for a new trial was denied, and the defendants appeal.

Only one question is presented here, viz., Were the contracts in question taxable? Section 9214 of the General Statutes of 1909 (Laws 1876, ch. 34, § 1) provides that all property in this state, real and personal, not expressly exempt therefrom, shall be subject to taxation. That the contracts in question, if taxable at all, are taxable as personal property is evident from the fact that the real estate which is the subject of the contracts continues to be independently taxed. Are these contracts, then, personal property? Section 9215 of the General Statutes of 1909 (Laws 1907, ch. 408, § 1) defines "personal property" as follows:

"The term 'personal property' shall include every tangible thing which is the subject of ownership, not forming part or parcel of real property; also," etc.

Webster's New International Dictionary gives as one definition of the word "tangible":

"Capable of being possessed or realized; readily apprehensible by the mind; real; substantial; evident."

Each of these contracts includes an unqualified promise to pay—the promise of the purchaser to pay to the seller the remainder of the purchase price of the land, and the seller of the land holds the legal title thereto

as security for the fulfillment of such promise. The contract in the possession of the seller is evidence of the indebtedness. The situation, logically, is not much different than if the seller had conveyed the land to the purchaser and taken a note and mortgage back to secure the remainder of the purchase price. The contract as truly constitutes a debt and security therefor as would a note and mortgage. It is capable of being possessed or realized, is readily apprehensible by the mind, real, substantial and evident. That it is not capable of being sold and transferred, as is a note and mortgage, without a conveyance of the legal title as security, only goes to the manner of transfer. The seller holds the legal title to the land in trust for the purchaser upon his complying with the conditions of the contract, and, undoubtedly, the seller could convey the legal title and assign this contract and his grantee would assume the same relations to the purchaser of the land that the vendor had held. Upon the payment of the debt, in either case, a court of equity would compel the transfer of the legal title to the purchaser or decree it. In such a case the thing sold would be the contract of indebtedness, with the security therefor, and not the land itself. Such transfer would not give to the vendor's grantee the right to possession of the land, nor the equitable title to the land, which under the contracts are possessed by the purchasers. (*City of Marquette v. Iron & Land Co.,* 132 Mich. 130; *Stearns v. Kennedy,* 94 Minn. 439; *Hubbard v. Glass Works,* 188 Mo. 18; *Marion v. Wolcott,* 68 N. J. Eq. 20; *Flanagan v. Great Cent. Land Co.,* 45 Ore. 335.)

The contracts in question vary materially from the contract construed in *Brown v. Thomas, Sheriff,* 37 Kan. 282. That case is cited in a footnote to *In re Assessment of Shields Bros.,* 134 Iowa, 559, reported in 10 L. R. A., n. s., 1061, at page 1062, and the authorities are there collated of cases in which the con-

tract is construed as an option to purchase. In *In re Assessment of Boyd*, 138 Iowa, 583, reported in 17 L. R. A., n. s., 1220, paragraph 1 of the headnote reads:

"An enforceable contract for the purchase of real estate is a credit subject to taxation, although it provides for forfeiture upon default of the purchaser."

In a note to that case is collected the authorities in support of the proposition cited in the headnote.

In *Rheinboldt v. Raine, Auditor, et al.*, 52 Ohio St. 160, it was said:

"A sum due the vendor of real estate from the vendee, as purchase money, to pay which the vendee has given an absolute obligation, is a credit and taxable as such, notwithstanding the vendor has retained the legal title of the land sold as his security." (Syl.)

It was also said in the opinion in that case, respecting the claim of double taxation made in this case:

"As to the claim that to tax these sums would result in double taxation it is enough to say that although the real estate continued to stand in the name of the partnership on the duplicate, yet, by the contract, the Kauffmans were obligated to pay all taxes and assessments, and if Rheinboldt, because of default on the part of the Kauffmans, should be compelled to pay any such charge, such payment would be payment of a debt of the Kauffmans rather than his own, and a legal right to collect of them would result." (52 Ohio St. 165.)

In *City of Marquette v. Iron & Land Co.*, 132 Mich. 130, in discussing a land contract similar to those in issue, it was said:

"The vendor has, in effect, exchanged his property for the unconditional obligation of the vendee, the performance of which is secured by the retention of the legal title. The fact that the vendee, in the case of the land contract, may, when making his final payment, demand a conveyance, does not distinguish the obligation from that of a credit secured by a mortgage, as the mortgagor may, when making his final payment, demand a discharge of the mortgage. The obligations under consideration, therefore, resemble, not agreements to pay future rent, or salary to be earned in the

future, or promises to buy merchandise and products to be delivered in the future, but credits secured by mortgages. The resemblance between these obligations and credits secured by purchase-money mortgages may best be described by stating that they differ only in this: That the vendor has a remedy to enforce his rights which is not given to the mortgagee, namely, he may take immediate possession of his security. Such an inconsequential difference affords no ground for a legal distinction. The decisions of this court which hold all credits secured by mortgages taxable are therefore, in our judgment, decisive of the proposition under discussion." (p. 132.)

The case of *Griffin v. Board of Review*, 184 Ill. 275, seems to be a leading one upon this question. The court in that case said:

"The appellant invested Riehl with the possession and beneficial use of the land, and obligated himself to invest him with the title also, upon the fulfillment by Riehl of the obligations on his part relative to the payment of the remainder of the purchase price of the land. For all the purposes of determining as to the liability of the land, and of the indebtedness due to appellant, to assessment for taxation, the retention of the title by the appellant may be regarded as but a mode adopted to secure the payment of the full purchase price of the land. In that view, the liability of the land and the debt to taxation is the same as in a case where the title has been placed in the purchaser and payment of the purchase price secured by means of a mortgage on the land acknowledging the indebtedness and creating a lien on the land to secure the payment. A debt secured by mortgage, and the land mortgaged to secure the debt, are both subject to taxation. . . . The legal effect of the transaction between the parties hereto was to create new or additional property, viz., a legally enforceable demand in favor of the appellant to recover from said Riehl the unpaid balance of the purchase money of the lands. This property is entirely distinct from the property in the land." (pp. 279, 280.)

(See, also, *Perrine v. Jacobs*, 64 Iowa, 79; *Clark v. Horn*, 122 Iowa, 375; *Cross v. Snakenberg*, 126 Iowa,

636; *State v. Rand*, 39 Minn. 502; *Revenue Agent v. Clarke*, 80 Miss. 134.)

It was said in *Douglas Co. v. U. P. R. W.*, 5 Kan. 615:

"In equity there is a maxim that equity will consider as done that which ought to be done, and that it will look upon things agreed to be done as actually performed. As an application of this maxim, equity generally considers that when land is sold on credit, and the deed is to be made when the purchase money is paid, that the land at the time the sale is made becomes the vendee's, and the purchase money the vendor's; that the vendor becomes at once the trustee of the vendee with respect to the land, and the vendee the trustee of the vendor with respect to the purchase money. But this maxim never applies where *time* is of the essence of the contract, and where the land is subject to absolute forfeiture on failure of some condition of the sale being performed; for there is no necessity in such a case for courts of equity to resort to any such fiction, and equity never looks upon a thing as done which ought not to be done, nor in favor of any party except one that has a right to pray that it may be done. In such a case no title, legal or equitable, passes until every condition of the sale is performed; and if such condition is not performed at the exact time that it should be performed, no title ever passes." (p. 622.)

The distinction here made illustrates the difference between this case and *Brown v. Thomas, Sheriff*, 37 Kan. 282. In the latter case time was made the essence of the contract, and all rights of the purchaser were immediately forfeited upon the failure to pay at the exact time. On the same theory, in the Douglas county case it was held that the purchaser at the time of the execution of the contract acquired no title, legal or equitable. In the case at bar, however, the contracts may be properly designated as contracts of sale and not contracts to sell. The sale and part payment were made in each case; possession was to be delivered on March 1, 1907, and presumably was delivered before the levy of the taxes in question, which were for the year 1908. The purchaser assumed the unconditional

obligation to pay the balance* of the purchase price and the taxes on the land, and by the conditions of "Exhibit B" it was inferentially provided that the seller might sue upon the contract for the purchase price and recover it as a debt. A personal judgment could be rendered for the amount of the purchase price, if unpaid. The purchaser became the owner of the land; the seller became the owner of the debt. The credit was secured by the legal title to the land, which the seller should not be compelled to convey until the debt was paid. The same may be said, practically, of "Exhibit A," except as to the last paragraph thereof, in which it is provided in substance that, if the purchaser fail to make the deferred payments within a reasonable time after the same become due and payable, then the contract shall cease and terminate and be forever void." This is not making time of the essence of the contract. It is a provision in favor of the seller. He may, upon failure of the purchaser for an unreasonable length of time, avoid the contract, but the purchaser can not by his own fault avoid it.

The case of *Bohart v. Investment Co.*, 49 Kan. 94, was an action brought by the investment company to recover judgment for the balance of the purchase price upon twelve written contracts for the sale of lots. The contracts seem to be quite similar to those in this case, particularly to "Exhibit A." In the opinion it was said:

"The provision in the contracts making them null and void if Bohart made default in the payment of his installments, or any installment, was for the benefit of the investment company. The company could have insisted upon this provision, and had the contracts annulled. It also had the right or option to declare a forfeiture for the nonpayment of the installments, or any installment; but it also could waive that right. . . . A waiver of the right to declare a forfeiture for nonpayment at a specified time is not a rescission of the contract. The investment company, as the vendor, is entitled to its money upon the contracts, and the vendee to the lots therein described." (p. 99.)

Judgment was rendered against the purchaser for the balance of the purchase price.

In *Chambers v. Anderson,* 51 Kan. 385, suit was brought against Chambers and his wife to recover judgment for the balance of the purchase price on a contract of sale of real estate, which contract was much more strict in its provisions in regard to time of payment and for avoiding the contract in case of failure or default, and of forfeiture of all rights by the purchaser, than those in this case. The defendants therein pleaded that the contract, by their failure to make the payments, was avoided, and the court held that the contract was not voidable at the option of the purchaser, but only at the option of the seller, and affirmed the judgment in favor of the seller against the purchaser for the unpaid balance of the purchase price.

It should further be remarked that the term "credit," as used in the assessment and taxation laws, was defined in section 2 of chapter 34 of the Laws of 1876 (Gen. Stat. 1901, § 7503) as follows:

"The term 'credit,' when used in this act, shall mean and include every demand for money, labor or other valuable thing, whether due or to become due, but not secured by lien on real estate."

Chapter 408 of the Laws of 1907 (see Gen. Stat. 1909, § 9215 *et seq.*), still in force, repealed the entire section in which the foregoing definition occurred, and omitted the definition from the section enacted in lieu thereof. This leaves the meaning of "credit" to be determined—that is, Is it included in the term "personal property"? The present statute (Laws 1907, ch. 408, § 1, Gen. Stat. 1909, § 9215) defines "personal property," as above, and the definition includes credits generally, as we have seen. It follows that had it been held in *Brown v. Thomas, Sheriff,* 37 Kan. 282, that the property of the plaintiffs therein was a credit secured by a lien on the real estate it would not have been subject to taxation, and the decision could not have been changed thereby.

We hold, therefore, that, even under "Exhibit A," the seller had a cause of action, after default of payment by the purchaser, to recover the unpaid balance of the purchase price. We conclude, therefore, that the contracts in question were personal property, and taxable. The unpaid purchase price therein is an indebtedness due, or to become due, from the purchaser to the seller, the payment of which was secured by the legal title to the land sold, which title was held in trust for the seller until such payment should be made.

The judgment is reversed and the case is remanded, with instructions to render judgment in favor of the defendants.