JOHN MOTZNER, *Appellee,* v. JOHN G. BOGAN, as Sheriff, etc., *Appellant.*

No. 17,960.

### SYLLABUS BY THE COURT.

1. CONTRACTS—*Real Estate—Void upon Default of Payment— Contract Taxable to Vendor.* Contracts for the conveyance of real estate for a consideration to be paid by the vendee, who also agrees to pay the taxes on the land and is given possession, are taxable against the vendor although they contain provisions that the vendee shall cultivate the land and apply one-half the proceeds of certain specified crops each year in payment for it and that the contract shall be void upon default of the vendee, who may then be treated as a tenant, and payments previously made applied as rent.

2. ——— *Same.* A clause in the contracts referred to, that time is of the essence of the agreement, does not relieve them from the burden of taxation.

Appeal from Russell district court. Opinion filed May 10, 1913. Modified.

*Lewis Colfax Conwell,* of Russell, and *S. N. Hawkes,* of Stockton, for the appellant.

*L. B. Beardsley,* of Russell, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an action to restrain the collection of taxes on certain contracts respecting the conveyance of land. These contracts are designated as

the Spaedt, Weimer, and Bender contracts, respectively. The Spaedt contract, dated April 18, 1908, recited that:

"*This Agreement,* made this 18th day of April, A. D. 1908, between John Motzner, a bachelor, party of the first part, and Jacob Spaedt, party of the second part, *Witnesseth:* That the said party of the first part hereby covenants and agrees that if the party of the second part shall first make the payment and perform the covenants hereinafter mentioned in this instrument, the said party of the first part will convey and assure to the party of the second part, in fee simple, clear of all incumbrances whatsoever . . . by a good and sufficient warranty deed, accompanied by an abstract of title, the following lot, piece or parcel of ground (descriptions). And the said party of the second part hereby covenants and agrees to pay the said party of the first part the sum of eight thousand and eighty dollars, in the manner following and within ten years as follows, to-wit:

"The proceeds of one-half of all the crops each year, payable on the 1st day of October of each year. It is fully agreed and understood that two-thirds of all the land in cultivation be sown to wheat each year; the rest of the land is to be planted and cultivated to such crops (as) the second party may elect. It is further agreed and understood that the principal, or any part thereof, may (be) paid at any time within the ten years, with interest at the rate of 6 per cent per annum, payable annually on the 1st day of Oct. of each year on the whole sum remaining from time to time unpaid. The said party of the second part hereby agrees to keep the buildings on said real property insured to the insurable value thereof in some good and reliable insurance company for the benefit of the party of the first part.

"The said second party further agrees that he will, in due season, pay all taxes or assessments that may become chargeable upon said premises or any part thereof, commencing with the taxes assessed for the year 1908, and that the buildings and improvements now on said land, or that shall hereafter be placed thereon, shall not be removed therefrom but shall be and remain the absolute property of the party of the first part until this contract shall be fully performed

32—89 KAN.

by said second party. And the party of the second part covenants and agrees with the party of the first part, that should default be made in the payment or payments aforesaid for twenty (20) days after such payments shall become due, or in case the party of the second part shall fail to pay the taxes or assessments on said lands before said lands shall have been offered for. sale for said taxes, then and in such case, at the option of the said first party, this agreement shall be null and void, and no longer binding on the party of the first part, and said first party shall have the right to re-enter and take immediate possession of the premises aforesaid, and all the payments that shall have been made under this agreement, and all the buildings and improvements on said land shall be and ever remain the absolute property of the party of the first part; and the party of the second part shall have no claim or right to recover said money, buildings, improvements, or any, or either, or any part of either. And in case this contract shall be determined as aforesaid, all of the payments which shall have been made by the said party of the second part under the terms herein and all of said buildings and improvements shall be taken and deemed to be as rental for the use and occupancy of said premises from the date of this contract to the date of its determination.

"It is further understood and agreed that the party of the first part shall have for the enforcement of this agreement all the rights and privileges of landlord to the party of the second part, who, during the existence of this agreement shall be a tenant or tenants of the party of the first part, until the purchase price under this agreement is paid in full, time being the essence of this agreement."

The instrument bore the following indorsements:

"Aug. 11, 1908, paid on this contract,  $401.87
Nov.  7, 1908, paid on this contract,   244.80
Nov.  5, 1909, paid on this contract,   800.00"

The Weimer contract relating to other land was in the same form and bore similar indorsements. The Bender contract recited:

"That the said party of the first part has this day sold to the said party of the second part, the following

described tracts and parcels of land, ( . . . ) upon the following terms of payment, to-wit: Six hundred dollars cash on Sept. 1st, 1909, for which a bankable note is given of even date herewith; seventy-two hundred dollars in crop payments, as follows, viz: One half of the crop until the whole sum of seventy-two hundred dollars is fully paid. The full consideration of this sale is seven thousand eight hundred dollars. The deferred payment of seventy-two hundred dollars to bear interest at the rate of six per cent per annum, payable annually. The said second party agrees to pay the taxes each year as they become due. The said second party is (to) cultivate all the land on said tracts each year, that can be cultivated, and to sow not less than one hundred and seventy-five acres to wheat, and deliver to the said party of the first part one half of all the crop, in Russell. The remainder of the land that can be cultivated to be planted (to) corn and feed crops and the half delivered in the city of Russell. .

"Now if all the foregoing conditions be performed by the said Henry P. Bender, the said second party, then, in that event, the said John Motzner, the said first party, shall make to him a good and sufficient warranty deed for above described land. If said second party fails to perform any or all, or any part, of the aforesaid. agreement, then shall this agreement be void.

"The said second party agrees to vacate the premises at any time he makes default in any part of the above agreement. It is agreed that all payments herein are to be considered as rent.payments until the full sum is paid."

The district court held that the Spaedt and Weimer contracts were not taxable and granted an injunction as prayed for. The defendant appeals. The Bender contract was held taxable, and the court refused to restrain the collection of the tax assessed upon it. The plaintiff appeals from that part of the judgment.

In each of the contracts held by the district court to be not taxable there is a covenant by the vendee to pay for the land and by the vendor to make conveyances upon such payments being made. The other contract

contained a recital of a sale upon definite terms of payment of a certain consideration, and the receipt of an advance payment. Each of the contracts contained an agreement of the vendee to pay taxes on the land and interest on deferred payments. Possession was taken and held by the respective vendees and payments were made each year and indorsed upon the contracts.

In view of the decisions of this court in *Williams v. Osage County,* 84 Kan. 508, 114 Pac. 858, and *McGregor v. Ireland,* 86 Kan. 426, 121 Pac. 358, holding similar contracts taxable, it is only necessary in considering the Spaedt and Weimer contracts to determine whether the features of these contracts relating to the cultivation of the land and application of the proceeds of crops, and making time of the essence of the agreements, distinguish them so far as to relieve the owner from the burden of taxation. The stipulation first referred to is only a provision for making payments through such means, and is, in a limited sense, a security additional to the legal title held by the vendor for the payments to be made. The covenant to pay is absolute. The failure to cultivate crops as agreed would not impair the primary obligation to pay the consideration, which could still be enforced. The provision that the agreements shall be void if the vendees make default are for the benefit of the vendor, who can still insist upon payment, although he has an option to declare a forfeiture. (*Bohart v. Investment Co.,* 49 Kan. 94, 30 Pac. 180.) The vendee in such a case can not by making default in his covenant avoid its obligation. (*Chambers v. Anderson,* 51 Kan. 385, 32 Pac. 1098.) The same principle applies to the clause making time the essence. The vendees can not, by default in cultivation and the application of proceeds or in making payment otherwise, terminate the contract and relieve themselves from performance. The contracts would be still enforceable against the vendee as

well as against the land. If enforceable against either the contracts are taxable. (*McGregor v. Ireland,* supra.)

In *Clark v. Horn,* 122 Iowa, 375, 98 N. W. 148, it was held that a contract to convey land upon stipulated payments, in which time was made of the essence, and which contained a provision that it should be void upon any default in making payment, an advance payment having been made, and possession taken, created an absolute indebtedness which could be enforced by the vendor notwithstanding the vendee's default, and that the contract was taxable. A like conclusion was reached in *Griffin v. Board of Review,* 184 Ill. 275, 56 N. E. 397, although there was provision for forfeiture in case of default in payment, and time was made of the essence of the agreement.

The Bender contract does not contain a formal express covenant to make payments, as the others do, but it recites a present sale, and refers to the payments one of which was made at the time the contract was entered into by the note of a third party. It also contains an agreement to cultivate the land and to apply half the proceeds of the crop upon the consideration, also a covenant to pay interest on deferred payments and to pay the taxes. The vendee was put in possession. The omission of a formal covenant to pay the consideration does not make the contract unilateral. The question whether both parties are bound is one of intention, to be determined from the whole instrument, and it is clear from the language used that it was understood that the vendee was to pay the consideration named, and that the agreement was mutual. It is only where the intention is plain and clear that one of the parties shall not be bound that an agreement is held to be unilateral. (*Flanders v. Merrill,* 38 Iowa, 583; *Cross v. Snakenberg,* 126 Iowa, 636, 102 N. W. 508.) A covenant to convey and a covenant to take create

mutual obligations. (*Golden v. Claudel*, 85 Kan. 465, 118 Pac. 77.)

No material difference in legal effect is found in the several contracts. Each conveys a substantial equity in the land, giving the vendee the right to the title upon making payment, and the vendor the corresponding right to enforce payment of the consideration.

The plaintiff suggests a difficulty in enforcing the contracts. The specific enforcement of the agreement to cultivate appears to be confused with the enforcement of the contract of purchase, which is the primary undertaking. It can not be doubted that if the vendees should fail to cultivate or apply the crops as agreed they would still be liable to pay the stipulated consideration for the land. It can not be contended that their failure to provide for the payments in a particular way would relieve them from making the payments altogether.

Within the principles decided in the Williams and McGregor cases and in *Harris v. Fravel,* post, 132 Pac. 206, all the contracts are credits of the vendor and subject to taxation. No other question is presented.

The cause is remanded with directions to modify the judgment in accordance with these views.