No. 24,456.

CHARLES JOHNSON, *Appellant*, v. L. P. WOODBURN, as County Treasurer of Pottawatomie County, *Appellee*.

SYLLABUS BY THE COURT.

1. TAXATION—*Contracts for Conveyance of Real Estate—Personal Property—Taxable Against Vendor*. Contracts for the conveyance of real estate for a consideration to be paid by the vendee who also agrees to pay the taxes on the land and is given possession, are taxable against the vendor, although they contain provisions that the contract shall be void upon default of the vendee and that payments previously made shall be forfeited.

2. SAME. A contract rests in the intention of the parties, and where it appears that the owner of land contracts to convey it to another at a stipulated price, the legal title remaining in the vendor as security for the debt, the owner cannot escape taxation on the contract of conveyance by clothing it in terms of a lease with option on the part of the lessee to purchase.

3. SAME—*Personal Property Omitted From Tax Rolls—Placed on Tax Rolls—*
   *Penalties—Construction of Statutes.* The provisions of chapter 307 of the
   Laws of 1919, which became effective February 24, 1919, and which super-
   seded section 11326 of the General Statutes of 1915, extended the period
   from one to five years in which omitted property may be placed on the
   rolls for taxation, was not intended to be retroactive and where property
   was omitted for the years 1918 and 1919 there was no authority to put it
   on the rolls in 1920 at twice its value for the year 1918.

4. SAME—*Intangible Personal Property—Taxable Where the Owner Resides.*
   Intangible personal property should be listed and taxed at the place in which
   the person charged with the tax, resides.

Appeal from Pottawatomie district court; ROBERT C. HEIZER, judge.
Opinion filed May 12, 1923. Reversed.

*C. B. Daughters,* of Manhattan, for the appellant.

*C. B. Griffith,* attorney-general, *John F. Rhodes,* assistant attorney-general,
*E. S. Francis,* county attorney, *A. E. Crane,* of Topeka, and *E. C. Brookens,*
of Westmoreland, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: Plaintiff sought to restrain the collection of taxes
on certain contracts for the conveyance of land. He was denied
relief, and appeals. He contends, that the contracts were not tax-
able; that a levy for the property which was omitted in 1918, and
1919, at the 1920 rate of taxation, was not authorized; that the tax
could not be placed on the rolls in a township other than that of his
residence; and that no penalty could be legally attached for failure
to list the property for taxation.

1. On February 21, 1917, the plaintiff executed certain contracts
which contained, among others, the following provisions:

"That the said party of the first part (plaintiff) hereby agrees to sell and
convey unto the said party of the second part, . . . upon the terms and
conditions herein specified for the sum of $20,000, to be paid at the times and
in the manner following, . . . $1,000 on the first day of March of each
year until 1937. . . . And the said party of the second part agrees to
purchase the real estate above described upon the terms and conditions
herein mentioned, and to pay the consideration and payments as above spec-
ified, and also all taxes and assessments hereinafter assessed and levied
against said premises, including the taxes for the year 1917. . . . And the
said party of the first part further agrees that, upon receiving said consideration
and sums of money aforesaid punctually and at the times above limited and
specified, and upon the full compliance with all the terms and conditions of
this agreement on the part of the said party of the second part, he will, at his
own expense, give, or cause to be given, to the said party of the second part,

his heirs and assigns, a good and sufficient deed of general warranty, together with a complete abstract of title, to date, conveying and assuring unto the said party of the second part a clear and unencumbered title, in fee simple, to the premises aforesaid."

### The contract also provided,

. "That the said party of the second part shall have full and immediate possession of the above described premises; that he shall keep the same in good repair; that he shall, at his own cost, effect, keep and maintain, during the term of this contract, insurance on said buildings . . . for the benefit of the party of the first part, his heirs or assigns; . . . that he shall pay all taxes and assessments as aforesaid when the same become due and payable."

Plaintiff held four of such contracts which were not returned for taxation. The question having been raised with reference to whether the contracts were taxable, the plaintiff, prior to March 1, 1920, had each of the other parties execute new contracts; also executed two additional contracts with other parties. The new contracts were attempted to be drawn in the form of a lease with option to purchase. They contained, among others, the following provisions:

"Fourth. That he (second party) will protect all improvements from fire, as far as possible.

"Fifth. That he will pay all taxes and assessments of every nature that may be levied against said premises.

"Sixth. That he will keep the buildings insured, for the sum of one thousand dollars for the benefit of the first party. .

"Seventh. That he will pay all sums to become due for rent promptly and if not paid when due, to pay 6 per cent interest from due until paid."

"First party agrees that at the time of rental payment of any year during the pendency of the lease, that, at the option of the second party, he having fulfilled each and all the requirements of the lease, first party will sell and convey to second party said premises upon the payment of all rents due and all to become due during the proposed life of the lease. This option may be exercised at any rental payment up to the final determination of the lease.

"And the said party of the second part, in consideration of the leasing of the premises as above set forth, covenant and agree with the said party of the first part to pay the said party of the first part, his heirs or assigns, as rent for the same the cash rent or sum of $18,000 in $1,000 1st of March each year thereafter until the year 1937, and in case of the default of any annual rental payments for more than three months, the lease shall terminate at the election of the first party, and second party shall yield up possession hereto."

### In reference to the change of contracts plaintiff testified:

"Q. When this last contract was drawn they didn't correspond in amount with the first contracts, did they? A. Because some of it had been paid.

"Q. You gave the parties credit for the amount already paid? A. Yes sir.

"Q. And in each and all of the contracts where there had been a contract

in existence before, you gave credit to the parties for the amount of money that had been paid on the original contract? A. Yes sir.

"Q. And they only had to pay the balance left and if they did they were to have a deed for the property? A. Yes sir."

2. A contract rests in the intention of the parties thereto. It is apparent that it was plaintiff's intention, under the contracts, to convey the property. The second contract was made to take the place of the first. The time of payment and the amount to be paid was not changed by the latter agreement. The party named in the last contract as lessee had paid under the original contract $2,000 on the purchase price of the land when the second contract was made. He was given credit for payments made under the original contract. Where it was the intention of the owner of land to sell and convey it to a purchaser, the owner could not escape taxation on his contract of conveyance by clothing it in terms of a lease with an option on the part of the lessee to purchase.

In *Williams v. Osage County*, 84 Kan. 508, 114 Pac. 858, it was said:

"Where two parties enter into a written contract for the sale of real estate, and the purchaser makes a partial payment thereon and a definite promise to pay the remainder of the price at a certain time or times and to pay the taxes on the land, and is to receive possession thereof at a certain date, and the seller undertakes to convey the legal title to the land upon the payment in full of the amount of the purchase price, such transaction creates a debt from the purchaser to the seller, which is secured by the retention of the legal title to the land by the seller until the debt is paid. The debt is personal property and is taxable under the law of this state, and this notwithstanding a provision in the contract that upon the failure of the purchaser to meet the conditions of the contract within a reasonable time the contract shall terminate and become void." (Syl.)

And in *Motzner v. Bogan*, 89 Kan. 496, 131 Pac. 1193, this language was used:

"Contracts for the conveyance of real estate for a consideration to be paid by the vendee, who also agrees to pay the taxes on the land and is given possession, are taxable against the vendor although they contain provisions that the vendee shall cultivate the land and apply one-half the proceeds of certain specified crops each year in payment for it and that the contract shall be void upon default of the vendee, who may then be treated as a tenant, and payments previously made applied as rent." (Syl 1.)

In construing a contract similiar to those in the instant case, this court, in *McGregor v. Ireland*, 86 Kan. 426, 430, 121 Pac. 358, held:

"That it is taxable because it is enforcible against the land; that the equitable title passed to the purchaser subject to being forfeited for default in the payments, the legal title remaining in the vendor as security for the debt; that the transaction between the parties was the same as though a mortgage had been given by the purchaser with the provision that in the event of foreclosure no personal judgment should be rendered against him and that the vendor should in that event look to the land alone for payment."

We conclude that plaintiff's contracts were taxable.

3. Some of plaintiff's property, including these contracts and some cash, was not listed for taxation in the years 1918 and 1919. In 1920 the assessor put it on the rolls for 1918 and 1919 at the rate for 1920, and at twice its value.

Chapter 307 of the Laws of 1919 provides:

"That if the assessor shall discover that any personal property, which was subject to taxation in any year, has not been assessed, or for any cause any portion of any personal property has escaped taxation in any year or years, within five years next preceding, it shall be the duty of the assessor to list and value such property at twice its real value for each such year during which such property, or any portion thereof, was not taxed, and it shall be designated on his return as 'Escaped Assessment' for the preceding year or years, and he shall indicate in his return the year or years for which such escaped assessment or assessments is made."

Previous to the adoption of chapter 307, section 11326 of the General Statutes of 1915, provided that property which had escaped taxation for the last preceding year should be listed at twice its value. It was not proper to value plaintiff's property at twice its real value at the 1920 rate for the years 1918 and 1919. The tax rate frequently varies, some years being higher than other years, and where property has escaped assessment for taxation for a number of years, when it is finally assessed, it should be subjected to the tax rate for the respective years during which it has escaped taxation. Plaintiff's property should have been listed and taxed (doubly) for each year as though it had been listed and taxed at the proper time. It was undoubtedly the legislative intent that taxes should be recovered on property which had been omitted, at the rate for the year in which it had escaped taxation. Chapter 307 of the Laws of 1919 became effective February 24 of that year. Under the old law the assessor could go back but one year. Had the law remained in effect until 1920, the assessor at that time could have gone back for only the taxes of 1919. The old act was superseded by chapter 307, which extends the period five years; however it does not appear to have

been intended that the statute should be retroactive. We conclude that while there may be a recovery, for the escaped taxes of 1918, there can not be a recovery of the penalities for that year. Both, however, were recoverable for 1919.

4. Plaintiff's property was extended on the tax rolls of Louisville township, whereas, he was a resident of Blue township. The rate in Blue township for 1918 was $6.80 per thousand; in Louisville township it was $12.60 per thousand. The rate in Blue township for 1919 was $10 per thousand and for 1920 $10.50 per thousand. In Louisville township the rate for 1920 was $18.10 per thousand. It will readily be seen that the taxing of plaintiff's property in Louisville township placed upon him an unjust burden. Intangible personal property should be listed and taxed at the place in which the person charged with the tax resides. (*Griffith v. Watson,* 19 Kan. 23; *Dykes v. Mortgage Co.,* 57 Kan. 416, 46 Pac. 711; *In re Miller's Estate,* 90 Kan. 819, 136 Pac. 255.) Other questions need not be discussed.

The judgment is reversed and the case remanded with directions to permit the extension of the taxes in accordance with the views herein expressed.