# CHARLESTON.

## BERRY v. HUMPHREYS.

Submitted September 8, 1915. Decided September 28, 1915.

1. VENDOR AND PURCHASER—*Contract of Sale—Option.*

A contract granting to the party of the second part an exclusive right and option to purchase certain lots of land and, in express terms, binding him to pay, in installments, a stipulated amount of purchase money, binding the parties of the first part to sell and convey the lots to him and giving them an option to annull the unperformed part of the contract, in case of default in payment, and treat the payments as money paid for the option and right of purchase and retain it, but not specifically extending to the party of the second part any right to withdraw or cease to make payments, is a contract of sale and purchase, not one of mere option to purchase. (p. 569).

2. CONTRACTS—*Construction—Language Used.*

Inferences and implications arising from the words of a contract yield to express provisions manifesting intention to the contrary thereof. (p. 572).

Appeal from Circuit Court, Kanawha County.

Suit by T. G. Berry against A. J. Humphreys. From decree for defendant, plaintiff appeals.

*Reversed and remanded.*

*Payne, Minor & Bouchelle,* for appellant.

*C. W. Good,* for appellee.

POFFENBARGER, JUDGE:

The decree complained of on this appeal sustained the demurrer to a bill for the specific performance of an alleged contract of sale of real estate and dismissed it as being one founded upon a contract giving only an option or right of purchase and not one effecting a sale of the property in question.

The disposition of the appeal involves only the construction of the contract exhibited with the bill. Samuel Glover and T. G. Berry, described as partners doing business as Glover-Berry Development Company, were the alleged grantors and A. J. Humphreys the alleged grantee. By a deed dated Aug. 31, 1910, the Union Savings Bank & Trust Co. conveyed to Glover and Berry, a tract of land in Hamilton County, Ohio, which they seem to have divided up into town lots, two of which Humphreys contracted for. By a deed dated July 5, 1911, Glover conveyed all of his interests to Berry, including, he alleges, such interest as Glover had in the Humphreys contract. The material portions of that contract read as follows:

"In consideration of the payment of the sums of money hereinafter mentioned and the performance of the agreements herein contained on the part of said second party, the said parties of the first part, do hereby agree and bind themselves to sell and convey to said second party and the said second *part* shall have the exclusive right and option for the period of ........ months from and after this date, to purchase from said first parties, subject to the agreements hereinafter set forth, the following described real estate, to-wit:

*Lot* Nos. 17 and 18 in Block F. as shown on a plat of lands owned by said first parties, made by J. R. Givens, C. E. and recorded in the office of the County Recorder in Hamilton County, State of Ohio.

Said second party agrees to pay to said first parties for the said real estate, the sum of four hundred dollars in payments as follows: $40.00 has been paid, in cash, the receipt of which is hereby acknowledged, and the residue is to be paid in Quarterly payments of $45.00 each which payments

shall be due and payable on the 1st day of June, Sept., and Dec. and February until paid.

When the whole of said purchase money shall·have been paid as herein provided, said parties of the first part shall make and deliver to the said purchaser, his heirs or assigns a proper deed, conveying·the full title to said real estate, with full covenants of warranty.

But it is always understood and agreed that if default be made in the payment of any monthly payment herein provided for and such default shall continue for a period of three months, it shall be understood that such default is an abandonment of this contract and right of purchase, and said contract shall thereafter, at the option of said first parties, become null and void, and all payments made under it shall be considered and treated as money paid for the option and right of purchase only to the date of such payments, and the same shall be retained by said first parties free of all claims and demands whatsoever of said second *part* and it is further agreed and understood that time shall be considered the essence of this agreement.''

After having made two payments in addition to the initial one, Humphreys, regarding the contract as optional on his part and denying obligation to make further payments, declined to do so, and Berry brought this suit to compel specific performance of the contract, as one of purchase.

Of course the intention of the parties is controling and must be ascertained from the language of the instrument. The grant of an option of purchase in the first clause, dependent upon performance of agreements set forth in subsequent portions of the contract, and reservation of an option to the alleged vendors in the last clause, are said to be wholly inconsistent with the theory of a sale. On the other hand, it is said the agreement of the first parties, to sell and convey the two lots, and of the second party, to pay the sum of $400.00 for them, are the vital, dominant provisions, to which the· optional clauses are subordinate and auxiliary. These apparently conflicting provisions must be reconciled, if possible, and the reconciliation must be made in such manner as to give effect to all the language, if that can be done. To interpret the contract as being a mere option to purchase,

would virtually nullify the reciprocal covenants to sell and to
pay the purchase money.  It would give full force and effect
to the options according to the literal import of the terms
relating to them, but it would virtually deny any office or
function to the covenants to sell and convey and pay pur-
chase money, and so violate the rule above adverted to.  It
is possible to give effect to all of the terms of the contract
as one of sale, with an option of forfeiture to the vendors.
Though, literally, there is a grant of an exclusive right and
option to the party of the second part, to purchase the lots,
neither this provision nor any other specifically confers upon
the second party any right of withdrawal or refusal of pay-
ment.  The alleged right to do so is only a matter of infer-
ence from the words of that portion of the contract, and that
inference is inconsistent with the agreement, on the one hand,
to sell, and, on the other, to pay the purchase money.  The
latter are positive and express covenants, prevailing uni-
formally in all 'jurisdictions over mere implications.  The
covenant to sell and convey can operate only in favor of the
second party and must of necessity do so, while the covenant
to pay the purchaser money operates in favor of the first
parties.  Each is the complement of the other.  Each extends
from one side of the contract to the other, leaving no room
for an implication.  The inevitable effect of their reciprocal
action is a contract of sale, and it is literally as full, com-
plete and specific as such contracts usually are.  Moreover, if
these covenants are not accorded this effect, they have prac-
tically none at all.  The covenant to pay would have to be
considered an option in direct violation of its express terms.
Its words are, not that the second party shall have an option,
privilege or right to pay, but a positive agreement that he
will pay, and there is no express release from it, nor any
condition upon which one may occur, save an election to
declare an abandonment of the purchase, annullment of the
unperformed part of the contract and forfeiture of the pay-
ments made, the right to which is secured only to the vendors.
This construction does not wholly deny effect to the provision
relied upon by the appellee.  Under it, he has a right and
option of purchase, conforming to its terms, but no option to
withdraw from the contract.  Nothing in the terms of the

clause purports to confer such a right. Hence, no violence is done to the language upon which he relies. It simply disallows prevalence of an inference over express covenants inconsistent with it.

An unnecessary implication must always yield to the force and effect of an· inconsistent express provision. *Booth* v. *Rooling Mill Co.*, 74 N. Y. 15; *Bruce* v. *National Bank*, 79 N. Y. 154; *Hutson Canal Co.* v. *Penna. Coal Co.*, 8 Wall. (U. S.) 276; *Maryland* v. *Railroad Co.*, 22 Wall. (U. S.) 105; *Aspdin* v. *Austin*, 5 Ad. & El. 671; *Churchward* v. *The Queen L. R.*, 1 Q. B. 173. In the last case cited, Lord Cockburn stated the rule on this subject, in the following terms: "The court should take great care not to make the contract speak where it was intentionally silent; and above all, that they do not make it speak entirely contrary to what, as may be gathered from the whole terms and tenor of the contract, was the intention of the parties."

Standing, as it does, upon a construction variant from the established rule, the court's action on the demurrer and the decree dismissing the bill are clearly erroneous.

The decree will be reversed, the demurrr overruled and the cause remanded.

*Reversed and remanded.*