# CHARLESTON.

F. L. MAXWELL *v.* HUNTINGTON REFRIGERATING & FIXTURE COMPANY.

Submitted December 4, 1923.   Decided December 11, 1923.

CONTRACTS—*Agreement Held Outright Sale of Corporate Stock Not Mere Option.*

> A written agreement between two parties whereby the party of the first part agrees to sell and transfer to the party of the second part fifty shares of corporate stock "as well also as all interests which the said party of the first part shall have in the said corporation, and all claims which he may have against said company, for the price of $3500.00," and further providing that the "payment aforesaid shall be made and the stock transferred within ten days from the date hereof," constitutes an outright and binding contract of sale and purchase and not a mere option to be exercised within ten days.

Error to Circuit Court, Cabell County.

Action by F. L. Maxwell against the Huntington Refrig-

erating & Fixture Company, Incorporated. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Livesey & McNeer,* for plaintiff in error.

*J. W. Perry,* for defendant in error.

Litz, Judge:

A writ of error was awarded the defendant to the judgment of the circuit court of Cabell county rendered October 11th, 1922, upon the verdict of the jury in favor of the plaintiff for the sum of $2,141.35.

On April 1st, 1922, the plaintiff, then being secretary and treasurer of defendant company, owning fifty shares of its capital stock, and having a claim against it amounting to $2,441.35 for services rendered as such secretary and treasurer, entered into the following written contract with George A. Mills, president and stockholder of the defendant: .

> "THIS AGREEMENT, Made and entered into this 1st day of April, 1922, by and between F. L. Maxwell, party of the first part, and George A. Mills, party of the second part.
>
> "Witnesseth: That the party of the first part does hereby agree to sell and transfer, and the said party of the second part agrees to buy from the party of the first part, fifty (50) shares of stock in the Huntington Refrigerating & Fixture Company, a corporation, having the par value of one hundred ($100.00) dollars per share; as well also as all interests which the said party of the first part shall have in the said corporation, and all claims which he may have in the said corporation, and the price of thirty five hundred ($3,500.00) dollars.
>
> "The payment aforesaid shall be made, and the stock transferred, within ten (10) days from the date hereof, and when said payment is made, and said stock transferred, the party of the first part, shall thereupon immediately resign his office as Secretary and Treasurer of said corporation, and also as a member of the Board of Directors.
>
> "Witness the following signature:
>
> "F. L. MAXWELL<br>GEO. S. MILLS."

Soon after execution of the contract, O. K. Hayslip, public accountant, was employed to examine and audit the books of the company which had been kept by the plaintiff. This work was begun about April 5th and completed April 20th, 1922. During its course, on the 18th or 19th of April, at the office of defendant, (according to the testimony of Hayslip, Mills and E. G. Wheeler, a bookkeeper assisting in the audit), the plaintiff in the presence of Mills and Wheeler advised Hayslip that he had sold this account for services to Mills. Thereupon the same was transferred upon the books to the credit of Mills, and later settled by the company issuing to him certain shares of its capital stock; the certificate of stock being signed by plaintiff as secretary and treasurer of the company.

Thereafter, in order to relieve the plaintiff of liability on account of his having served as such secretary and treasurer, and to prevent him from engaging in business as a competitor of the defendant within limited time and territory, the defendant on or about April 25th, 1922, entered into a written contract with the plaintiff releasing him from such liability, and the plaintiff likewise agreed in writing with Mills, then the chief stockholder of the company, that he would not, within a certain period and territory, engage in business as competitor of the defendant company. The former contract, exhibited in evidence, states that plaintiff had sold his fifty shares of stock to Mills. An extract from the preamble of the latter agreement, not in evidence, recites that plaintiff had sold his fifty shares of stock to Mills for $3500.00. Upon the execution of these two writings or memoranda, neither of which purports to evidence the contract of sale and purchase between the parties, (but each referring, merely by recital, to the sale and purchase as theretofore having been made), the plaintiff accepted from Mills a check for $3500.00, showing on its face to have been given "For 50 shares of stock *and entire interest*".

After these transactions, May 6th, 1922, the plaintiff instituted this action in assumpsit for the recovery of the claim of $2141.35 for services. The suit was resisted on the ground that the debt had been transferred to Mills under the contract of April 1st, 1922, and afterward settled with him by the defendant in the manner above set out.

The evidence does not show that this contract was ever abrogated by the parties. Plaintiff admits that he received under it the $3,500.00 check. He, however, contends that the writing constituted a mere option, terminating ten days after its execution. The following is taken from his testimony in chief presenting this theory:

"Q. In other words, was the account for which this suit was brought included in the contract of April 1st, 1922, which has been offered in evidence?

"A. It was.

"Q. Well, if it did (was) then you have no suit?

"A. If I understand the question right, I agreed to sell my interest for which this account is sued for.

"Q. Why did you bring this suit, Mr. Maxwell, if they had already settled it?

"A. They had not settled for it. The option expired in ten days and he did not pay the amount during the option period.

"Q. That is what I am asking you about. The agreement was only given for ten days, you say?

"A. Yes, the option was for ten days and it expired on the 10th day of April and the deal was not consummated until the 25th of April."

There is no merit in the contention that this agreement was a mere option to be performed within ten days from its execution. It clearly evidences an outright sale of plaintiff's fifty shares of stock, as well as all his interests in the corporation, including "all claims which he may have against said company." The provision that the purchase price should be paid and the stock transferred within ten days does not affect the binding force of the agreement. *Monongah Coal & Coke Company* v. *Fleming,* 42 W. Va. 528; *Berry* v. *Humphreys,* 76 W. Va. 668.

But it would make no difference to treat the writing as an option if the sale and purchase were consummated thereunder, as appears to be the case.

We, therefore, reverse the judgment below, set aside the jury's verdict, and award the defendant a new trial.

*Reversed and remanded.*