## SUBURBAN IMP. CO. v. SCOTT LUMBER CO. et al.

### No. 3263.

Circuit Court of Appeals, Fourth Circuit.

June 13, 1932.

712

John A. Howard, of Wheeling, W. Va. (Howard & Howard, William C. Howard, and John A. Howard, Jr., all of Wheeling, W. Va., on the brief), for appellant.

Frank W. Nesbitt, of Wheeling, W. Va. (Nesbitt & Nesbitt and Russell G. Nesbitt, all of Wheeling, W. Va., on the brief), for appellee Scott Lumber Co.

Before PARKER and NORTHCOTT, Circuit Judges, and PAUL, District Judge.

PARKER, Circuit Judge.

This is an appeal from a decree dismissing a bill in which complainant asked specific performance of a contract, that the amount due under it be set off against a claim for which defendant had filed a mechanic's lien on complainant's property, and that a mandatory injunction issue requiring defendant to cancel the lien as a cloud on the title of the property. The answer, in addition to denying the allegations of the bill, asserted as a counterclaim the indebtedness of complainant under a contract to repair a building, and asked that the lien, which it had filed under the laws of West Virginia, be enforced, and that the property of complainant subject to the lien be sold in satisfaction thereof. The decree retained the matters embraced in the counterclaim for adjudication, and the appeal from same might for that reason be dismissed as premature; but, since the argument, the parties have filed with this court a stipulation fixing the amount to which defendant is entitled under the counterclaim. As this disposes of the only question left open by the decree, we shall treat same as final and entertain the appeal.

The original bill in the case was filed September 13, 1929. There is some doubt as to the right on the part of complainant to recover at that time under the contract in controversy, although we think that even then complainant, under the allegations of the bill, was entitled to relief as against the lien which had been filed in so far as it covered property not appurtenant to the building upon which repairs had been made. On March 21, 1931, however, complainant was allowed to file an amended and supplemental bill, which, in addition to alleging the matters set forth in the original bill, pleaded that defendant in the years 1929 and 1930 had failed to purchase lots and make payments as required by the contract. The failure to make these payments had occurred since the filing of the original bill; and complainant was properly allowed to file the amended and supplemental bill alleging such failure. A number of technical procedural points are raised, which we need not consider. The only question of importance before us, in view of the fact that the amended and supplemental bill was allowed to be filed, is whether it should have been dismissed as failing to allege grounds for equitable relief. This question must be determined upon the allegations of the bill.

The facts, as stated in the amended and supplemental bill, are as follows: Complain-

ant is the owner of a suburban real estate development near the city of Wheeling, W. Va., upon which is situate a valuable dwelling surrounded by a park containing a large acreage of land valuable for residential purposes. Some time prior to 1928, complainant divided this property into more than one hundred residential lots and platted same, showing the original residence on a lot in the center of the property bounded on three sides by a roadway then in use. Complainant in the year 1928 entered into two contracts with defendant—the first relating to the sale of lots to defendant; the second providing that defendant should make repairs upon and additions to the dwelling on the property, so as to convert same into an apartment house or double dwelling.

The first contract, claimed by complainant to be a contract of sale and by defendant to be a mere option, provided that complainant would sell to defendant any or all of forty-two lots listed in a paper attached to the contract at agreed prices, which were 62 per cent. of the prices at which complainant had listed them, and would extend roads, sewers, and water and electric lines to any lot purchased. The defendant, on its part, agreed that during the year 1928 it would purchase lots to the value of $20,000, and that each year thereafter during the life of the contract it would purchase other lots of equal value. Failure on the part of defendant to make purchases according to contract was to operate as a forfeiture of its rights thereunder upon a declaration of forfeiture by complainant. The contract provided also that during the life of the contract defendant should have the right to purchase sixteen additional lots, but that complainant should be under no obligations to extend roads to same unless complainant should purchase and pay for lots in excess of the required minimum sufficient to pay for the cost of road construction. The provisions of the contract which we deem material are as follows:

"First: The party of the first part, for and in consideration of the sum of One Dollar ($1.00), the receipt of which is hereby acknowledged, and in further consideration of the covenants and agreements of the party of the second part hereinafter expressed, agrees to sell any one or all of the Howard Place unsold lots, included in the list of lots hereto attached and hereby made a part of this agreement, at the prices set forth in the said list under the heading 'Contract Price,' at any time while this contract remains in force. * * *

"Sixth: The party of the second part agrees, upon its part, that it will, within the calendar year 1928, purchase and pay for a number of the said lots, aggregating in price at the least twenty thousand dollars ($20,000.00), and that it will, within each and every calendar year thereafter, during the life of this contract, purchase and pay for a number of said lots aggregating in price at the least twenty thousand dollars ($20,000.00). It is mutually covenanted and agreed that failure or default on the part of the party of the second part to comply with the provisions of this paragraph shall cause a forfeiture of its rights under this contract. In case of such default, the party of the first part shall have the right to execute a written declaration of forfeiture and mail the same to the office of the party of the second part, addressed to the 'Scott Lumber Company, Bridgeport, Ohio,' which shall be sufficient declaration and notice of forfeiture and ninety days thereafter this contract shall terminate, and become void and of no further effect.

"Provided, however, that if, before the expiration of the said period of ninety days, the party of the second part shall cure the default by purchasing in accordance with the terms of this contract a lot or sufficient number of lots to make the aggregate sum paid to the party of the first part, for the calendar year in which the default occurred, at the least twenty thousand dollars ($20,000.00), the contract shall thereupon be reinstated. In the event of a default, a declaration of forfeiture, and such curing of the default, a notation of the fact of the forfeiture and the curing thereof, and the reinstatement of the contract shall be written on or written and attached to both copies of this contract, and signed by the party of the first part and the party of the second part, whereupon this contract shall be of the same effect as if no default or forfeiture had occurred. Lot No. 16, purchased by the party of the second part prior to the date of this contract, and the money paid and to be paid therefor shall be included in the minimum of twenty thousand dollars ($20,000.00), which the party of the first part is to receive of the party of the second part within the calendar year of 1928.

"It is the intention of this contract that the party of the first part is to receive for lots purchased within each calendar year, at

the least twenty thousand dollars ($20,000.-00), but it is understood and agreed that any sum in excess of twenty thousand dollars ($20,000.00) in any calendar year, will be considered in making up the required minimum in any succeeding year. * * *

"Tenth: The party of the first part also agrees that in addition to the lots described in the said list, the party of the second part shall, during the existence of this contract, have the right to purchase, upon the same terms and conditions, the following additional lots: 73, 74, 75, 76, 77, 78, 82, 83, 84, I, J, K, L, M, N, and O, but this with the express understanding that the party of the first part shall not be required to extend the roads, shown on the said map reaching said lots, or to construct any road to said lots mentioned in this paragraph, until it decides of its own volition to do so. In the event, however, of the party of the second part desiring the completion of the roads to the lots mentioned in this paragraph, the party of the first part agrees to promptly construct and complete such roads on condition, however, that the party of the second part will purchase and pay for additional lots, aggregating a sum in excess of the required minimum provided in the sixth paragraph of this contract, sufficient to cover the cost of such road construction. Any sum paid to the party of the first part, in any calendar year, in excess of twenty thousand dollars ($20,-000.00) may be considered as applied to this provision for road construction.

"Eleventh: It is understood and agreed that this contract constitutes an option, which divests the party of the first part of its right to make sale to any other party of any of the lots included herein, during the life of this contract, but it is agreed, however, that other sales thereof may be made by mutual agreement of both parties hereto, but not without the consent of the party of the second part.

"Twelfth: This contract shall apply to and be binding upon the successors and assigns of the party of the first part and of the party of the second part."

The bill alleges that complainant is ready, willing, and able to perform its agreement under the contract, but that defendant denies that it is obligated to purchase any lots thereunder, and has refused to purchase any since 1928. It prays that defendant be required to specifically perform the contract in accordance with its terms and to take and pay for the lots which it was obligated there-by to take. It asks also that the amount due defendant under its claim for labor and materials be credited against the amount due complainant under the contract. It alleges that the lien of defendant was filed so as to cover the entire property of complainant, and not merely the building repaired and the lot upon which it stands, and that this lien constitutes a cloud upon the title of the property not included within the lot, which should be removed.

However the facts may appear upon the final hearing of the case, we think that upon the face of the amended and supplemental bill complainant has stated a case entitling it to relief. We do not agree with the lower court in its interpretation of the contract. We think that it is not a mere option contract, but that coupled with the option on the part of the defendant to purchase the lots listed at any time during the life of the contract is an agreement binding on the defendant to purchase lots during each year of its life to the value of $20,000. This life of the contract is not indefinite. It extends over such period as may be required for the purchase under its terms of the lots embraced in paragraph 1. If these lots are purchased at the rate of $20,000 per year, the contract will extend over a period of nine years. This period, however, may be cut short by defendant's electing to purchase all of them within a shorter period or by complainant's electing to declare the contract forfeited on account of the default of the defendant. The contract does confer certain options on the defendant. Defendant has an option as to which of the lots it will take under the contract during any given year. It has an option to take all of the lots remaining unpurchased at any time that it desires to do so. It has the option to take the sixteen lots described in paragraph 10 of the contract in addition to the forty-two covered by the first paragraph. But it is bound unequivocally to "purchase and pay for" lots to the value of $20,000 during each year of the life of the contract. Paragraph 6 not only binds defendant to purchase and pay for within the year 1928 a number of the lots aggregating in price at the least $20,000 and lots of like value within each calendar year thereafter during the life of the contract, but it also recites that it is the intention of the contract that complainant shall receive for lots purchased within each calendar year at least $20,000, and provides for defendant being considered in default upon its failure each year to purchase and pay

for lots of that value. Paragraph 10 refers to the $20,000 worth of lots which defendant is to purchase each year as "the required minimum." Paragraph 12 provides that the contract shall be binding upon the successors and assigns of defendant as well as upon those of complainant, thus showing an intention that defendant should be bound to the performance of obligations, not merely vested with a right.

The distinguishing characteristic of an option contract is that it imposes no binding obligation upon the person holding the option. "An 'option' is simply a contract, by which the owner of property agrees that another shall have a right to buy it [the property] at a fixed price within a certain time." Words and Phrases, Second Series, p. 753. Litz v. Goosling, 93 Ky. 185, 19 S. W. 527, 21 L. R. A. 127. Where, however, there is not merely the right but the obligation to buy, the contract is not one of option, but is a binding contract of sale. Berry v. Humphreys, 76 W. Va. 668, 86 S. E. 568; Gutierrez del Arroyo v. Graham, 227 U. S. 181, 33 S. Ct. 248, 57 L. Ed. 472; Mound Mines Co. v. Hawthorne (C. C. A. 8th) 173 F. 882; Wheeling Creek Gas, Coal & Coke Co. v. Elder, 54 W. Va. 335, 46 S. E. 357; Sitterding v. Grizzard, 114 N. C. 108, 19 S. E. 92; Williams v. Board of Com'rs of Osage County, 84 Kan. 508, 114 P. 858, 34 L. R. A. (N. S.) 1221. And see note in 3 A. L. R. 576, 582 et seq. In Berry v. Humphreys, supra, the Supreme Court of Appeals of West Virginia dealt with a contract similar in many respects to that involved here; and in the headnotes, which in that jurisdiction are the controlling statement of the law, laid down the rule which we think applicable as follows:

"A contract granting to the party of the second part an exclusive right and option to purchase certain lots of land, and in express terms binding him to pay, in installments, a stipulated amount of purchase money, binding the parties of the first part to sell and convey the lots to him, and giving them an option to annull the unperformed part of the contract, in case of default in payment, and treat the payments as money paid for the option and right of purchase, and retain it, but not specifically extending to the party of the second part any right to withdraw or cease to make payments, is a contract of sale and purchase, not one of mere option to purchase."

There is nothing in the condition contained in the sixth paragraph of the contract which converts the binding agreement to purchase into a mere option; for it confers upon defendant no option to be relieved of making the purchases and payments provided for. Complainant only is given the right to declare a forfeiture thereunder; and, in the absence of the exercise of this right by complainant, there can be no question but that both parties remain bound. It is well settled that such a provision does not convert a binding contract into a mere option on the part of the purchaser. Berry v. Humphreys, supra; Mound Mines Co. v. Hawthorne, supra; Williams v. Board of Com'rs of Osage County, supra; Knisely v. Leathe (Mo. Sup.) 178 S. W. 453; Allison v. Cocke's Ex'r, 106 Ky. 763, 51 S. W. 593; Canfield v. Westcott, 5 Cow. (N. Y.) 270.

And we think that it makes no difference that in the eleventh paragraph the contract is referred to as an option, or that, as appears elsewhere in the record, complainant at the same time executed a paper for registration reciting that an option had been given defendant on all of the lots mentioned in the contract. As stated above, the contract contained certain optional features. It gave an option to defendant to purchase any or all of the lots at any time; but it also imposed upon defendant the definite obligation of purchasing $20,000 worth of them each year. So far as the eleventh paragraph is concerned, it is clear that its purpose was not to relieve defendant of this obligation, but to make clear that complainant might not, without the joinder of defendant, make sale of any of the lots embraced in the contract. But, apart from this, the nature of a contract is to be determined, not by the name which the parties have given it, but by the nature of the obligations which it imposes; and, where it imposes the obligation to which we have adverted, there can be no question that it is a binding contract, whatever name it may have been given. Williams v. Renza, 4 Alaska, 154; Chenoweth v. Butterfield, 11 Ariz. 315, 94 P. 1131. The vital consideration in construing a contract is not what the parties call it, but what they put in it; for the law regards substance and not form.

Since, therefore, the contract imposed upon defendant a binding obligation to purchase and pay for real estate which it should select each year from the lots listed, and since the bill as amended alleged willingness and ability to perform on the part of complainant and failure and refusal on the part of defendant, there can be no question but that

it set forth grounds for invoking the equity of specific performance. It is clear also that, as the amended bill showed a liquidated sum due complainant under the contract, complainant was entitled to have same set off against the amount due defendant for which it had filed the mechanic's lien which the counterclaim seeks to enforce. See 40 C. J. 380; and cases there cited.

And there is another equity in the bill. It appears that defendant filed its mechanic's lien on the entire property of complainant, and not merely upon the building repaired and the lot upon which same was situate. This property had been divided into lots, and defendant had a plat showing their location. The house upon which the repairs were made was situate on a lot surrounded on three sides by a road; and it would have been a matter of no difficulty to describe it accurately. Notwithstanding this, the lien was filed on a large acreage embraced in a number of distinct tracts. The statute of West Virginia provides that a person erecting or repairing a building shall have a lien upon the building and upon the "interest of the owner thereof in the lot of land whereon the same stands" to secure the payment of the contract price. Barnes West Virginia Code, c. 75, § 2. We think it clear that, where a residential development is divided into lots, as is the case here, and a building is erected or repaired on one of these lots, the right to a lien under this statute, in the absence of special circumstances not here material, extends no further than the boundaries of the lot whereon the building stands, although the owner may own other realty adjacent thereto. 18 R. C. L. 949; 40 C. J. 273; note 26 L. R. A. (N. S.) 836; Gilman v. Ryan, 95 Va. 494, 28 S. E. 875; Pollock v. Morrison, 176 Mass. 83, 57 N. E. 326. The object of the law is to give to those who have enhanced the value of the building the security of a lien thereon, not to give a lien upon property not benefited.

The lien as filed by defendant covered too much property, and was void in so far as it professed to cover property beyond the lot upon which the residence stood. As to property beyond this, it constituted a cloud upon title, to remove which complainant was entitled to invoke the aid of equity. 51 C. J. 159; Sheets v. Prosser, 16 N. D. 180, 112 N. W. 72; Johnston v. Kramer Bros. & Co. (D. C.) 203 F. 733, 742. The lien is not invalid, however, as to the building repaired and the lot upon which it is situate. Der-

rickson v. Edwards, 29 N. J. Law, 468, 80 Am. Dec. 220, 225; Lyon & Gribble v. Logan, 68 Tex. 521, 5 S. W. 72, 2 Am. St. Rep. 511; White Lake Lumber Co. v. Russell, 22 Neb. 126, 34 N. W. 104, 3 Am. St. Rep. 262; note Ann. Cas. 1914D, at page 883; 18 R. C. L. 940. Upon the face of the amended bill, therefore, complainant was entitled to have the mechanic's lien released in so far as it affected other land than the lot upon which stood the building repaired.

For the reasons stated, there was error in the decree dismissing the bill. Same will be reversed, and the case will be remanded for further proceedings not inconsistent with this opinion.

Reversed.