# W. A. DRAKE, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

## No. 2935.

Circuit Court of Appeals, Tenth Circuit.

Oct. 26, 1944.

Alden T. Hill, of Fort Collins, Colo. (Mortimer Stone, of Fort Collins, Colo., on the brief), for petitioner.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The question in this case is whether a loss sustained by petitioner as the result of the sale of a farm during the tax year in question was deductible under Section 24(b) (1) (B) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 24.[1]

Petitioner was a family corporation largely created for the purpose of handling the assets left by W. A. Drake, who died intestate. The assets of the corporation consisted mostly of farm lands. Included among them was a farm known as the Anderson farm. Petitioner entered into a written agreement with Frank L. Bartels on October 11, 1940,[2] which resulted in a

---

[1] Section 24:

"(b) Losses from sales or exchanges of property

"(1) Losses disallowed. In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly— * * *

"(B) Except in the case of distributions in liquidation, between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual; * * *

"(2) Stock ownership, family, and partnership rule. For the purposes of determining, in applying paragraph (1), the ownership of stock— * * *

"(B) An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family; * * *

"(D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; * * *."

[2] The contract:

"This Agreement, Made in duplicate this 11th day of October A. D. 1940, between W. A. Drake, Inc. of the County of Larimer, and State of Colorado, of the first part, and Frank L. Bartels of the second part;

"Witnesseth, That if the party of the second part shall first make the payments and perform the covenants herein mentioned to be made and performed by the party of the second part, the party of the first part will thereupon convey to the party of the second part the following described property situate in the County of Larimer and State of Colorado, to-wit:

"The East half (E½) of Section twenty-six (26), Township seven (7) North, Range Sixty-nine (69) West of the Sixth Principal Meridian, except about ninety (90) acres conveyed to A. W. Roth by

sale of this farm to Bartels. Bartels paid for the farm by transferring 443 shares of petitioner's stock to the corporation and assuming an outstanding mortgage. The transaction resulted in an admitted loss to petitioner. It deducted this loss from its income tax return for the applicable tax year. The Commissioner disallowed the deduction and assessed a deficiency tax. The Tax Court sustained the Commissioner, and petitioner has appealed.

It is conceded that immediately prior to the institution of the negotiations which resulted in the sale of the Anderson farm to Bartels, he was the owner, individually and through his family, of more than fifty

deed dated February 28, 1906, and recorded March 1, 1906 in Book 212, Page 448, Larimer County, Colorado records, together with all water and water rights, ditch and ditch rights, lateral and lateral rights appertaining thereto, and particularly three (3) shares of the capital stock of The New Mercer Ditch Company and eight (8) shares of the capital stock of The Pleasant Valley and Lake Canal Company, twenty-one (21) Mountain and Plains Preferred Rights, subject, however, to rights of way for public roads, and rights of way for ditches used conveying water to other lands and right of way for railroad, Acreage conveyed 225 acres, more or less, situated in Larimer County, Colorado.

"In fee simple by good and sufficient Warranty Deed, free and clear from all liens and encumbrances except Mortgage to Union Central Life Insurance Company, Cincinnati, Ohio $15,208.89, and deliver an abstract of title therefor so showing.

"And the part.. of the second part agrees to pay to the party of the first part, as the purchase price of the said property, the sum of $43,290.00 Dollars, in the manner following, to-wit: Ten dollars cash in hand paid, the receipt whereof is hereby acknowledged, and

"By assumption of Mortgage $15,208.89
443 Shares W. A. Drake, Inc.    28,081.11

"On or before January 1,
1941        $43,290.00

"Party of the First Part shall pay to the Party of the Second Part 5½% interest on all cash paid on this contract from date of payment to January 1, 1941.

"Party of First Part shall pay all taxes assessed for the year 1940 and all interest on mortgage to date of settlement. Party of First Part shall retain all crops grown during season of 1940.

"With interest payable upon the deferred payments at the rate of 5 per cent per annum from Jan. 1, 1941 until paid, and to pay all taxes and assessments that may be hereafter levied upon said property before the same become delinquent, and to keep all build-ings erected thereon insured for the benefit of the party of the first part for the value thereof, and until the termination hereof be entitled to possession of said property, but in case of failure of the party of the second part to make any one or more of said payments, or perform any of the covenants agreed to be made and performed by the party of the second part, this agreement may be terminated at the election of the party of the first part, upon giving to the party of the second part thirty days' notice of intention so to do, which notice may be served as provided by law for service of notice to quit, and in case of such election the party of the second part shall forfeit all payments made, and such payments shall be retained by the party of the first part in full satisfaction and liquidation of all damages the party of the first part may have sustained.

"It Is Mutually Agreed, That time shall be of the essence of this agreement, and if at any time the same shall be terminated in the manner above provided, the party of the first part shall have the right to re-enter and take immediate possession of said property, and the party of the second part hereby agrees to immediately surrender and deliver up the same peaceably, to the party of the first part, and if the party of the second part shall remain in possession thereof after such termination, said part.. of the second part shall be deemed guilty of a forcible detainer of said premises under the statute, and shall be subject to eviction and removal, forcibly or otherwise, with or without process of law.

"And it is further mutually agreed that all the covenants and agreements herein contained shall extend to and be binding upon the heirs, executors, administrators, successors and assigns of the respective parties.

"In Witness Whereof, The parties hereto have hereunto set their hands and seals the day and year first above written.

    "W. A. Drake, Inc.,
        By S. R. Morsman, President
    "Frank L. Bartels."

per cent in value of petitioner's outstanding stock within the meaning of Section 24 of the Revenue Act. On October 11, 1940, the day on which the contract was executed, 354 shares of the stock, a part of the consideration, were transferred to the corporation on its books. Thereafter Bartels owned, individually and through his family, less than fifty per cent in value of the outstanding stock of the corporation. The balance of the consideration was not paid until some time subsequent to October 11, 1940, and the deed to the farm was not executed until December 24, and was delivered to Bartels about January 9, 1941.

Section 24(b) (1) (B) specifically provides that a corporation may not deduct a loss resulting from a transaction between it and one who owns, directly or indirectly, more than fifty per cent in value of the corporation's outstanding stock. Petitioner recognizes the force and effect of this statute, but contends that it does not apply here because Bartels was not the owner of more than fifty per cent of the stock at the time the transaction resulting in the sale of the Anderson farm became binding on the parties. Its position is that the contract of October 11 was a mere option to purchase, that it conferred no rights upon petitioner and cast no enforceable obligations upon Bartels. With this we cannot agree.

The distinguishing characteristics of an option contract are that it imposes no binding obligation upon the person holding it. Suburban Improvement Co. v. Scott Lumber Co., 4 Cir., 59 F.2d 711, 87 A.L.R. 555. The contract here did more than confer a mere privilege upon Bartels to buy or not to buy as he saw fit. It is true that the first part of the contract was conditional and that it provided that the corporation would convey the land if Bartels would first make the payments of the consideration as provided for in the contract and perform the covenants required of him therein. But it did more than this. In the contract Bartels specifically agreed to pay the purchase price and agreed to pay interest from January 1, 1941, and all taxes after the year 1940. A reading of the entire contract leads us to conclude that it was more than a mere option to purchase. It was a binding agreement to purchase. Had Bartels refused to make the balance of the payments, the corporation could have tendered the deed into court and demanded judgment for the balance due. That the contract gave the corporation the right to cancel in the event of default by Bartels did not convert an otherwise binding contract into an option contract. Suburban Improvement Co. v. Scott Lumber Co., supra. Bartels did not have the right to cancel. He was bound to perform.

The case of Stelson v. Haigler, 63 Colo. 200, 165 P. 265, 3 A.L.R. 550, upon which petitioner relies, does not sustain its position. A careful reading of that case will reveal marked differences between the contract there and the one under consideration here. A case much more in point by the Colorado Supreme Court is Cullen v. Park Land Co., 67 Colo. 210, 184 P. 303.

Petitioner emphasizes a line of decisions which hold that a loss must be sustained during the taxable year in which a deduction is claimed, and that it must be manifested by a closed transaction or an identifiable event. These decisions have no value here. If the question were whether petitioner had taken the deduction in the proper year, these cases would be applicable. But here it is not a question as to the year in which the loss occurred. Admittedly it occurred during the taxable year in which it was claimed. The right to deduct this loss depends upon the nature of the transaction out of which it arose. It arose out of a transaction with an individual who owned, directly or indirectly, more than fifty-one per cent in value of the outstanding stock of petitioner.

It is immaterial whether title to the stock passed to the corporation before title to the land passed to Bartels, or vice versa, or whether title passed at the same time. The transaction out of which the loss occurred had its beginning with the contract of October 11, 1940, which we have held was a binding and enforceable contract from the date of its execution. This places the transaction squarely within the purview of the Act, and petitioner was not entitled to the claimed deduction.

Affirmed.