OPINION. Opper, Judge: The only theory on which petitioners can claim a loss for 1943, the single year in issue, is that their transfer of the Crane overrides to the' corporation, which they say gave rise to the loss, was postponed pending completion of the other phases of the transaction which were covered by the escrow. The Crane assignment took place in 1942 but the escrow was in effect until the following March when the final cash payment and other details were consummated. However, one of the matters covered by the escrow, and which resulted from its completion, was petitioners’ acquisition of the remaining stock of the corporation. If the effectiveness of the Crane assignment is held in abeyance by reason of the escrow, the result is a transfer to a wholly-owned corporation, any loss from which is disallowed by the express terms of section 24 (b), Internal Revenue Code.[1] The case relied on by petitioners, W. A. Drake, Inc. v. Commissioner (C. A. 10), 145 F. 2d 365, does not hold otherwise. There the contract of sale giving rise to the claimed loss became effective simultaneously with the vendee’s relinquishment of his control of the vendor-taxpayer. But there, as the Court made clear, the important aspect was that when the contract was entered into the control existed and the contract could not have resulted without it. Here, the important circumstance is that once the original contract had been signed, petitioners were assured of control of the acquiring corporation and could with impunity assign a valuable property to it at a loss, knowing that they were not actually disposing of anything and that the “loss” was purely illusory. Cf. Higgins v. Smith, 308 U. S. 473. One of the purposes of section 24 (b) was to prevent exactly this sort of thing. * * * la H. R. 704, 73d Cong., 2d sess., it was said: “Experience shows that the practice of creating losses through transactions between members of a family and close corporations has been frequently utilized for avoiding income tax. It is believed that the proposed change will operate to close this loophole of tax avoidance.” The same language was repeated in S. R. No. 558, 73d Cong., 2d sess. (C. B. 1939-1, Part 2, p. 607); cf. Higgins v. Smith, 308 U. S. 473. * * * The “major purpose of” the 1937 bill was said to be “to close loopholes in the revenue laws of which numerous taxpayers have availed themselves.” [W. A. Drake, Inc., 3 T. C. 33, 39, affirmed W. A. Drake, Inc. v. Commissioner, supra.] Whether or not the statute is ambiguous, we conclude that the-congressional design was to have section 24 (b) cover this kind of transaction and that, if necessary to accomplish this purpose, the acquisition or relinquishment of control simultaneously with the prohibited transaction should be viewed as “ownership” within the plain meaning of the legislation. Otherwise we should be opening the very “loophole” Congress thought it was closing. We accordingly find no error in the determination. Reviewed by the Court. Decision will be entered for the respondent. (b) Losses from Sales or Exchanges of Property.— (1) Losses disallowed. — In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly— ******* (B) Except in the case of distributions in liquidation, between an individual and a corporation more than 80 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual; [[Image here]] (2) Stock ownership, family, and partnership rule. — For the purposes of determining, in applying paragraph (1), the ownership of stock— ******* (B). An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family; ******* (D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants: