JULIUS LONG STERN AND (MRS.) ELLEN V. STERN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34887.   Promulgated October 30, 1953.

*Edgar J. Goodrich, Esq.,* and *Lipman Redman, Esq.,* for the petitioners.

*Edward Pesin, Esq.,* for the respondent.

### OPINION.

OPPER, *Judge:* The question is whether there was a "sale" of petitioner's property to a member of his family, that is his daughter, so as to forbid the deduction of any loss under section 24 (b), Internal Revenue Code.[1] It is not sufficient that the property may also have been purchased by petitioner's son-in-law. *Walter Simister, Jr.,* 4 T. C. 470. A tenancy by the entirety confers on each grantee ownership *per tout et non per my.*[2] *Gallagher's Estate,* 352 Pa. 476, 43 A. 2d 132; *Wakefield* v. *Wakefield,* 149 Pa. Super. 9, 25 A. 2d 841. When the transfer was completed petitioner's daughter accordingly owned it all. In addition she supplied the purchase price equally with her husband by use of the joint bank account, see *Gallagher's Estate, supra,* and by becoming jointly and severally liable on the

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

  (b) LOSSES FROM SALES OR EXCHANGES OF PROPERTY.—

    (1) LOSSES DISALLOWED.—In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

      (A) Between members of a family, as defined in paragraph (2) (D) ;

    *      *      *      *      *      *      *

    (2) STOCK OWNERSHIP, FAMILY, AND PARTNERSHIP RULE.—For the purposes of determining, in applying paragraph (1), the ownership of stock—

    *      *      *      *      *      *      *

      (D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; * * *

[2] "An estate by the entirety is a form of co-ownership in real and personal property held by a husband and wife with right of survivorship. Its essential characteristic is that each spouse is seized per tout et non per my, i. e., of the whole or the entirety and not of a share, moiety, or divisible part. *Gasner* v. *Pierce,* 286 Pa. 529, 134 A. 494 ; *Porobenski* v. *American Alliance Ins. Co.,* 319 Pa. 410, 176 A. 205; *Madden* v. *Gosztonyi S. & T. Co., supra; C. I. T. Corporation* v. *Flint,* 333 Pa. 350, 5 A. 2d 126, 121 A. L. R. 1022." [*Gallagher's Estate, supra,* p. 133.]

mortgage which it was necessary to obtain in order to supply the cash payment to petitioner. Under such circumstances we cannot say that the property was not sold to petitioner's daughter within the meaning of the statute. *Walter Simister, Jr., supra.* And since here the entire property was sold to the daughter the entire loss, rather than a half as in the *Simister* case, must be disallowed.

Such cases as *Nordling* v. *Commissioner*, (C. A. 9) 166 F. 2d 703, and *Charles J. Stamler*, 45 B. T. A. 37, are in no respect an impediment to this result. In both, sales to an excluded individual were held to be purely "nominal" with the reality requiring treatment as an actual sale to a family member so as to cause disallowance of the loss. Such a construction is necessary in order to prevent evasion of the section. It does not necessitate the allowance of the present loss where to do so would likewise frustrate the legislative purpose. Cf. *Prentiss D. Moore*, 17 T. C. 1030, affd. (C. A. 5) 202 F. 2d 45, with *W. A. Drake, Inc.*, 3 T. C. 33, affd. (C. A. 10) 145 F. 2d 365.

Whether there was in fact a loss we accordingly find it unnecessary to determine. It seems highly improbable that the value of the property would have decreased by 50 per cent in the single year between the time of its conversion to business use and its sale. If the unfurnished value in 1947 is indicated by the only offer received, it was worth no more when converted to business use than petitioner ultimately received. If on the other hand it was as valuable on the earlier date as contended by petitioner we regard it as highly probable that it was sold for less than fair market value and that any "loss" was the result of petitioner's own choice and rather illusory than real. See *Higgins* v. *Smith*, 308 U. S. 473. This was precisely the sort of situation to which section 24 (b) was directed, H. Rept. No. 704, 73d Cong., 2d Sess., p. 23; although the very difficulty of ascertaining whether a sale at a loss is bona fide is one of the reasons for the automatic nature of the disallowance.[3]

It follows that both the language and purpose of the section require that respondent's action in disallowing any supposed loss on the transaction be approved. See *McWilliams* v. *Commissioner*, 331 U. S. 694.

Reviewed by the Court.

*Decision will be entered for the respondent.*

RAUM, *J.*, concurs in the result.

VAN FOSSAN, *J.*, dissents.

---

[3] Hon. Samuel B. Hill (Chairman, Subcommittee of Committee on Ways and Means) stated in discussion of the bill which introduced this section into the tax laws :
"Also, since we have provided in this bill against transactions between members of the same families, whereby a man may transfer to his wife, to his daughter, his son, or father, or any member of his family in direct line of ascent or descent, we have removed the temptation from tax dodgers who transfer securities or other property from one member of a family to another in order to deduct a capital loss against ordinary income." [78 Cong. Rec., 73d Cong., 2d Sess., p. 2662.]

Bruce, *J.*, concurring: In my opinion the petitioner has not established that he suffered any loss.

The property involved was converted to business property on September 1, 1947, the date on which it was rented, and the loss, if any, is to be measured by the difference between the fair market value on that date and the sale price less cost of sale. It is to be noted that the petitioner first decided to sell his residence located at 36 West River Street, Wilkes-Barre, Pa., in March 1946. Following discussions with two prominent real estate experts, he listed the property for sale first with one and then with the other, at a price of $75,000. Later, in January 1947, the property was listed with other real estate offices in Wilkes-Barre. Intensive efforts were made to sell the property, including advertising the house for sale and other steps taken to interest prospective purchasers. Although several prospects were shown through the property, but one offer to purchase, that of Charles S. Popky, made in March 1947, was received. This offer was in the amount of $40,000 and was to include the furnishings, which had been appraised at a fair market value of $10,000. The Popky offer was rejected by the petitioner as being too low. Failing a sale of the property, notwithstanding a very active real estate market in Wilkes-Barre during the years 1946 and 1947, petitioner, on September 1, 1947, rented the property to his son-in-law for 1 year. During this period petitioner received a rental of $200 per month, which was considered to be a high rental. This is less than a 10 per cent return on a $30,000 house, the amount for which the property was finally sold to petitioner's son-in-law in the late summer of 1948. Upon all the facts, it is my opinion petitioner has not established that he suffered any loss.

Murdock and Turner, *JJ.*, agree with this concurring opinion.

---

Hill, *J.*, dissenting: I must dissent from the majority opinion herein. The provisions of section 24 (b) (1) (A) of the Internal Revenue Code are explicit. They provide that losses from "sales or exchanges" between members of a family shall not be deductible whether accomplished directly or indirectly. "Family" is defined in equally explicit terms to include an individual's brothers and sisters, his spouse, ancestors, and lineal descendants, and, as we have held, one's son-in-law is not properly includible in the definition set forth. Therefore, it appears that the *sine qua non* for the disallowance of the loss with which we are presently concerned is a determination of fact that the petitioner entered into a sale or exchange of the West River Street property to his daughter, Claire Guttman. The evidence establishes the contrary.

The majority opinion stresses the point that if a husband and wife take title to property as tenants by the entirety each is the owner of the whole and not merely of a moiety or share. I have no quarrel with that pronouncement. But the majority opinion goes further and holds that the legal status as to such title automatically makes each spouse a vendee of the whole title as well as a grantee thereof. Obviously, the question of whether such grantee is also such vendee is one of fact and not one of law. It is also a truism that law does not and can not create a factual status or the fact or facts forming the basis of such status.

I submit that in this case the evidence establishes this fact: Petitioner's daughter was not a vendee but was merely a grantee by the donative grace of her husband.

An examination of the majority opinion makes it obvious that no sale or exchange to Claire Guttman took place in fact. Instead, the majority relies upon legal fiction in the effort to establish that a sale between the petitioner and his daughter was accomplished as a matter of law. The fiction relied upon belongs to the law of real property. It had its roots in the common law and was born centuries before income taxation was a gleam in the fiscal eye of government. This fiction argues that husband and wife are one. In the enactment and administration of the revenue laws, fact rather than fiction is made to prevail. For example, section 811 (e) of the Internal Revenue Code provides that the value of the gross estate of a decedent shall be determined by including the value at the time of his death of all real property as follows:

(e) To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: *Provided*, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: *Provided further*, That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants.

Therefore, in spite of the fiction on which the majority relies, it is obvious that the full value of the West River Street property would

be includible in the gross estate of the petitioner's son-in-law for the petitioner's daughter supplied no part of the consideration with which the property was acquired in money or money's worth. In fact she took her interest as a donee, her husband being the donor. She acquired by gift from her husband. She purchased nothing. She paid for nothing. The majority opinion's holding that she supplied her share of the purchase price equally with her husband by use of their joint bank accounts is without basis in tax law.

In *Estate of Fletcher E. Awrey*, 5 T. C. 222, reviewed by the Court without dissent, one of the issues to be decided was to what extent, if any, the decedent's wife was the owner of certain property standing in the decedent's and her joint names as tenants by the entirety. See Mich. Stat. Ann. §§ 26.201, 26.202 (1937). In holding that the entire value of the contested properties was includible in the decedent's gross estate, we said:

It is clear that these jointly owned properties were acquired with funds drawn from or consisting of several savings bank deposits which stood in the joint names of decedent and his wife and which had as their source decedent's share of the partnership distributions. Having held under the first issue that decedent's wife had at the time of his death no interest in his share of the net worth of the partnership, we are of the opinion that the value of the contested items as of the time of decedent's death should properly be included in his gross estate. We, therefore, hold that the Commissioner did not err in including the total value of such property in decedent's gross estate.

The parallel here is inescapable for the facts set forth show that the consideration paid to the petitioner was wholly earned by his son-in-law, who supplied all of the funds entering into the bank accounts held jointly by him and his wife. Nor is the fact that the petitioner's daughter joined in the mortgage and bond to the Miners National Bank important. That was a separate transaction involving the bank, the petitioner's son-in-law, and the petitioner's daughter. The petitioner was not a party to it, directly or indirectly. Further, even had the property been taken in Dr. Guttman's name alone, it would have been necessary that his wife join in the mortgage and in its accompanying bond. How else could the bank have been protected against her intervening interest, dower or otherwise, in the property? This is a practice essential to the protection of all mortgagees of real property and is not determinative of the issue before us.

In the past we have not been misled by either fiction or form, e. g., *Charles J. Stamler*, 45 B. T. A. 37; *Prentiss D. Moore*, 17 T. C. 1030, and *W. A. Drake, Inc.*, 3 T. C. 33. I see no reason to abandon realities here.

The majority's suggestion that its holding is necessary to the preservation of the purpose intended by section 24 (b) is without basis. Congressional intent is made explicit by the definition of "family" found in section 24 (b) (2) (D). That definition does not

include son-in-law, nor is it within our power to accomplish by judicial edict that which Congress specifically refused to do. The automatic disallowance of losses required by section 24 (b) applies only in the circumstances set forth by that section and does not relieve this Court of its duty to make determinations of fact in other instances. Arguments of administrative convenience can not overawe the intent of the statute, particularly here where Congress has by explicit definition preempted such a result.

The result reached by the majority is not necessary to carry out the legislative intent of section 24 (b), nor, in my opinion, does the situation with which we presently deal fall within the provisions of that section.

That the petitioner in fact sustained a loss is, to my mind, incontrovertible. The petitioner's evidence, which was strong and convincing to me, established preponderantly that the fair market value on the date the property was converted to income-producing use was $60,000.

In opposition to the petitioner's evidence, the respondent's "expert" relied upon the assessed value of the property for local tax purposes, the only offer received, the selling price, and the fact that there are more buyers generally for smaller inexpensive homes than for large expensive residences—hardly a sound basis for determining fair market value. The Popky offer on which the respondent's expert relied was made by a man who had no knowledge of real estate and whose only consideration in making the offer was his ability to pay. The worth of such an offer in determining fair market value is nil. *Sharp* v. *United States*, 191 U. S. 341. The ultimate sales price was a sacrifice price accepted by the petitioner to accomplish a quick sale. As the petitioner himself put it, "I was in a position where I wanted to cut my losses, pay off the mortgage, and get rid of this responsibility, and I made up my mind, when his lease was up, I was going to sell the house for the best price I could get for it." This circumstance does not fix the fair market value of the property at the time that it was converted to income-producing use, nor on the date that it was ultimately sold. *Gilbert Creek Land Co.*, 14 B. T. A. 921, 929, and *Thomas Palmer*, 23 B. T. A. 296.

The evidence concerning the assessed value of the land for local tax purposes was excluded from the record as hearsay and the truism that more small inexpensive homes are sold than large expensive residences may be relevant as to the ability to make a quick sale, but is hardly determinative of the fair market value of the petitioner's property.

ARUNDELL, BLACK, LEMIRE, JOHNSON, and TIETJENS, *JJ.*, agree with this dissent.